Argued September 23, affirmed October 13, rehearing denied December 21, 1915.

## RAMASWAMY *v.* HAMMOND LUMBER CO.*

### (152 Pac. 223.)

**Master and Servant—Pleading—Sufficiency of Reply.**

1. In a servant's action for injury from dangerous and unguarded machinery, where the master pleaded contributory negligence and assumption of risk, a reply alleging that the control of the power was not visible from the place where plaintiff was injured, that he worked in a dangerous place only because ordered to work there, that he had no knowledge as to the manner of operating the machinery or of the dangers and risks of going underneath a sorting table in the sawmill, that he did not negligently place his hand or sleeve into the cogwheels, and denying that his injury was in any way due to his negligence, was a sufficient denial of the affirmative defenses.

**Master and Servant—Negligence—Employers' Liability Act—Contributory Negligence.**

2. Under Employers' Liability Act (Laws 1911, p. 16) contributory negligence is not a defense, but may be taken into account by the jury in fixing the damages.

*An analogous discussion of Employers' Liability Acts will be found in notes in 47 L. R. A. (N. S.) 38, and L. R. A. 1915C, 47, on constitutionality, application and effect of Federal Employers' Liability Act.

As to acquiring jurisdiction over foreign corporation by service of process, see note in 70 L. R. A. 532.          REPORTER.

**Master and Servant—Master's Liability—Assumption of Risk.**

3. The defense of a servant's assumption of risk is not available in an action coming within the provisions of the Employers' Liability Act (Laws 1911, p. 16).

**Pleading—Judgment on Pleadings—Denial of Immaterial Allegation— Reply.**

4. Where the defenses of contributory negligence and assumption of risk pleaded were not available, though the reply thereto was insufficient, there was no error in refusing judgment on the pleadings, since a denial of an immaterial allegation raises no issue.

**Venue—Transitory Action—Personal Injury.**

5. An action for damages resulting from personal injuries is a transitory, and not a local, action.

**Corporations—Foreign Corporations—Process—Statute.**

6. Under Section 6726, L. O. L., requiring every foreign corporation before doing business in the state to execute a power of attorney and record it with the Secretary of State, empowering some resident, as its attorney in fact, to accept service of all process necessary to give complete jurisdiction to any court of the state, the appointment is made for the whole state; and in a servant's action for injury received in C. County, where the defendant's agent for process resided, service upon him there gave the Circuit Court of M. County jurisdiction, since jurisdiction of a foreign corporation may be obtained by the Circuit Court for any county by summons upon the resident agent, regardless of his residence or where the cause of action arose.

[As to designation by foreign corporation of agent to accept service, see note in 85 Am. St. Rep. 926.]

**Corporations—Foreign Corporations—Process.**

7. Where a state prescribes the conditions upon which foreign corporations may do business and a method whereby its courts may acquire jurisdiction by process upon its designated agents, a corporation subsequently doing business in the state is deemed to consent to such conditions, and to be bound by the prescribed process.

**Appeal and Error—Harmless Error—Pleading—Election.**

8. In a servant's action for personal injury, where the complaint asserted the cause of action in four ways differing in respect to the machinery, whether it was in motion or was started after plaintiff commenced work, and as to the protection of the cogwheels, and the defendant before trial moved that plaintiff be required to elect, that the court required him to elect only after the close of plaintiff's evidence was not prejudicial to defendant.

**Master and Servant—Action for Injury—Evidence—Machinery.**

9. In a servant's action for injury from dangerous and unprotected cogwheels in a sawmill, evidence for plaintiff of a mechanical engineer who had visited the sawmill and examined the sorting-table where plaintiff was injured and observed the manner in which it was operated was admissible, where the operation was approximately the same as when the machinery was run before, and where a diagram of the sorting-table and the machinery showing the cogwheels was in evidence.

**Evidence—Master and Servant—Expert Evidence—Machinery.**

10. In a servant's action for injury from the dangerous and unprotected cogwheels in a sawmill, where defendant did not claim that the place of work was not dangerous, but that plaintiff's disregard of his duties caused the injury, expert testimony of a mechanical engineer who had worked in several similar places that the place under the sorting-table where the cogwheels moved was dangerous was inadmissible.

**Appeal and Error—Harmless Error—Admission of Evidence.**

11. In a servant's action for injury, where it appeared that he was 21 years of age, and where the complaint alleged that he was capable of earning $2 per day by manual labor, $50 per month as a stenographer, that he was a graduate of a university, and upon completion of his electrical course might earn from $3,000 to $10,000 a year, temporary admission of evidence tending to show the salary of a mechanical engineer to be $3,000 per year and over was not prejudicial to defendant, in view of an instruction not to consider what plaintiff might earn after education for a profession.

**Master and Servant—Dangerous Place to Work—Evidence.**

12. In view of Employers' Liability Act (Laws 1911, p. 16), Section 2, providing that the manager or foreman in charge of construction or operation should be the agent of the employer in all suits for damages for injury to an employee, evidence in a servant's action for injury, where there was a dispute as to whether he was directed to work where he was injured, to the effect that the defendant's foreman had told him that if he did not like the job he could leave, was admissible as tending to show where plaintiff was required to work.

**Witnesses—Cross-examination—Scope.**

13. In a servant's action for injury from unguarded machinery in a sawmill, defendant introduced a certificate of the state labor commissioner, dated about one year before the injury, that the mill was properly equipped and the machinery protected as required by law, which certificate, under Section 5046, L. O. L., was only *prima facie* evidence of the condition of the sawmill at its date, and where the deputy commissioner testified that he had inspected the mill about a year later, about four days before the accident, it was proper cross-examination to show by the witness that he would not have then passed the mill for renewal; the defendant upon redirect being entitled to show that the defective condition referred to related to other machinery than that in question.

**Master and Servant—Instructions—Contributory Negligence.**

14. In view of the Employers' Liability Act (Laws 1911, p. 16), declaring contributory negligence to be no defense, defendant's requested charge that its negligence could not be presumed from the accident, but that plaintiff must show it was caused by defendant's sole negligence without plaintiff's own negligence, was properly modified by adding that, if it was solely the plaintiff's fault, and not his contributory fault, he could not recover.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

The plaintiff, Krishna Ramaswamy, instituted this action in the Circuit Court for Multnomah County against the defendant, the Hammond Lumber Company, a corporation, to recover damages for a personal injury inflicted upon him while he was in the employ of the defendant. Verdict and judgment went for the plaintiff in the sum of $6,500. Defendant appeals.

The defendant is a foreign corporation organized and existing under the laws of the State of New Jersey. At the time of the institution of this action its principal office and place of business was at Tongue Point, Clatsop County, Oregon, where it operated a sawmill with certain machinery therein. In his complaint plaintiff describes the accident resulting in the injury in four separate causes of action differing somewhat in the narration of the occurrence. Upon the trial he elected to rely upon the second cause of action, the substance of which as to the allegations of negligence is as follows: That defendant's machinery was dangerous to operate or to work near, and should have been securely covered and protected to the fullest extent that its operation would permit, but that defendant willfully and negligently failed to cover and protect it; that in the course of the operation thereof it was necessary for the safety of persons working near the dangerous machinery that there be provided a system of communications by means of signals for prompt and efficient communication between them and the employees, which system defendant negligently failed to provide; that part of the machinery consisted of cogwheels which were uncovered and unprotected; that about October 15, 1912,

plaintiff was employed by the defendant as a laborer in and about the sawmill; that defendant, with willful negligence and disregard for the safety of plaintiff, by its foreman, Thomas Penny, ordered him to clean up a quantity of sawdust which had accumulated under and around a place in the sawmill in the vicinity of the dangerous machinery and cogwheels, which were not then in motion; and that in pursuance thereof plaintiff began to do the work as directed, when the defendant willfully and negligently suddenly started or caused to be started, without warning or signal to plaintiff, the dangerous machinery and cogwheels in the vicinity of which plaintiff was working, whereupon the unprotected cogwheels caught the sleeve of the right arm of plaintiff's coat, pulling his right arm between said cogwheels and mangling the same, necessitating the amputation thereof.

Robert S. Shaw, the statutory agent of defendant, resided at Tongue Point, Clatsop County, Oregon, where the cause of action arose, which place was specified in the power of attorney appointing him and filed in the office of the Secretary of State. Service of summons and complaint was had upon defendant by serving the same upon its statutory agent in the above-named county.

The defendant made a special appearance before the Circuit Court by a motion to quash the summons and the return thereof. This motion was based upon the ground, as shown by affidavit, that the action was commenced and prosecuted in the wrong county, and therefore the Circuit Court had no jurisdiction of the cause of action or of the defendant. The court overruled this motion, and held that by the service of the summons jurisdiction was acquired over the defendant. The defendant then filed its answer, in which it

pleaded practically the same state of facts disclosed by the motion and affidavit as a special plea in abatement to the further prosecution of the action.

To this the plaintiff interposed a demurrer, which was sustained by the court upon the ground that said plea did not state facts sufficient to constitute "abatement of plaintiff's complaint." Defendant stood upon such plea, and interposed a plea in bar, paragraph 1 of which, after asserting the corporate character of defendant and that it was licensed to do business in Oregon and engaged therein in Clatsop County, alleged the following, in effect: That in the operation of said mill a considerable portion of the lumber cut was at the time of the accident automatically placed upon a sorting-table and by endless chains passed thereon to carriers for distribution; that the sorting-table was operated in sections by electric power, the controls being alongside thereof, the main table being about 300 feet in length, 12 feet in width, and elevated about 8 feet above the floor upon which it was constructed; that on each side thereof was an elevated platform about 3 feet above the floor, leaving a clear space underneath the table of about 5 feet and ample room for any person attempting to pass thereunder in the exercise of any care whatever, but that no employee was required to work thereunder, and could get under said table only by crawling; that at the time complained of about 15 of defendant's employees were working around the sorting-table under the charge of one foreman; that prior to the accident plaintiff had been in the employ of the company many months working around the sorting-tables, and had full notice and knowledge of the manner of its operation and its dangers, and as to the manner of its construction and of the machinery and appliances underneath the same,

and of the dangers, risks and hazards of going under the table, and that it was no part of plaintiff's duty to do so; that plaintiff wrongfully and negligently, in violation of the duties of his employment, and without notice to or knowledge of the defendant, voluntarily went underneath the table, and so carelessly and negligently conducted himself that he placed his hand, sleeve or clothing into the cogs of the cogwheels, which were rapidly revolving, and in plain view and fully protected, that his hand caught therein, and he thereby met with the accident, and not otherwise; that the accident was caused solely by the carelessness and negligence of plaintiff.

Paragraph 2 of the defendant's plea in bar alleges that plaintiff was skilled in the work in which he was engaged, and fully understood and appreciated the ordinary dangers, risks and hazards of the same and assumed all the risks and dangers thereof.

A sample of the plaintiff's reply to paragraph 1 is as follows:

"Plaintiff alleges that the control of the electric power by which the section of the sorting-table under which plaintiff was injured was operated was not visible from the place where plaintiff was at the time he received his injuries; and plaintiff alleges that the place where he was ordered to be by the defendant, which was the place where said injuries were inflicted upon him, was a dangerous place and known to be such by defendant; and plaintiff alleges that he was in such dangerous place only because he was directed to go there and work there, as stated in his complaint, by order of defendant; and plaintiff denies that he had been in the employ of defendant for many months and had been during said time working in and around said sorting-table, or that he had full or any notice or knowledge as to the manner of construction and operation of said sorting-tables or of the ma-

chinery and appliances underneath the same, or of the dangers, risks, and hazards of going underneath said table or tables; and plaintiff denies that he wrongfully, carelessly or negligently, or in violation of the duties of his employment, and without notice to or knowledge of defendant or its servants and employees, or any of them, went underneath said sorting-table and so carelessly and negligently conducted himself that he carelessly and negligently placed his hand, sleeve or clothing into the cogs of the set of cogwheels which were underneath said sorting-table, which said cogwheels were rapidly revolving and in plain view or fully protected. But, on the contrary, plaintiff avers that defendant, with willful and gross recklessness, carelessness, negligence, and disregard for the safety of plaintiff, ordered and directed plaintiff to go in the vicinity of the dangerous machinery and cogwheels, * * which were not then in motion.''

Then follows a reiteration of the description of the condition of the cogwheels and the direction of the defendant to plaintiff. The reply contains the following somewhat general denial:

''And plaintiff denies that said injuries were in any way due to or caused by his carelessness or negligence, or by any violation of the duties of his employment, but alleges that said injuries were caused solely and entirely as set forth in plaintiff's complaint in this action.''

The other allegations of paragraph 1 and paragraph 2 of the answer were traversed in much the same manner.     Affirmed.     Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. George C. Fulton.*

For respondent there was a brief and an oral argument by *Mr. Hamilton Johnston.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is asserted by defendant that plaintiff did not by his reply deny the allegations of its affirmative defense in bar. Before the case was called for trial defendant moved for a judgment on the pleadings upon the ground, *inter alia,* that its answer stated facts showing a complete defense and all matters set forth in the complaint, and that such facts were not denied in the reply. The court overruled this motion.

1. It will be seen that defendant pleaded contributory negligence, and also assumption of risk. While the reply thereto was not a model pleading, we think it was sufficient when we consider the general denial of any negligence on the part of plaintiff, and that it plainly appears that it was the intention of the plaintiff to deny every allegation.

2. However we may consider the matter, contributory negligence, under the Employers' Liability Act (Laws 1911, p. 16), is not a defense, but may be taken into account by the jury in fixing the damages. Consequently defendant was not entitled to a judgment on account of the defective reply, as this plea in bar did not state a defense to plaintiff's complaint.

3. As to the plea of assumption of risk, it is now well settled that such a plea is not available as a defense in an action coming within the provisions of the Employers' Liability Act.

4. Therefore, although the reply was bad, there was no error in refusing to allow the motion for judgment on the pleadings. A denial of an immaterial allegation raises no issue: *Graham* v. *Coos Bay R. & N. Co.,* 71 Or. 393 (139 Pac. 337, 340).

The motion to quash and the plea in abatement of defendant presented the same question; namely, the

right to sue a foreign corporation in any other county than the one in which the cause of action arose or the one in which it has its office and principal place of business, when the resident agent resides in the same county as such office is located.

5. An action for damages resulting from personal injuries is transitory, and not a local action: *Shmit* v. *Day,* 27 Or. 110 (39 Pac. 870). Prior to the enactment of 1903 providing for the appointment by a foreign corporation of an attorney in fact, there was no express statutory regulation of the manner of service of the summons upon a foreign corporation, except by publication thereof according to the provisions of Section 56, L. O. L.

6, 7. The act of 1903 (Section 6726, L. O. L.) provides, among other things, that every foreign corporation, before transacting business within this state, shall execute and acknowledge a power of attorney, and cause the same to be recorded in the office of the Secretary of State, appointing some person who is a citizen of the United States and a citizen and resident of this state as its attorney in fact, which shall authorize and empower such attorney—

"to accept service of all writs, process, and summons, requisite or necessary to give complete jurisdiction of any such corporation, joint-stock company, or association to any of the courts of this state or United States courts therein, and shall be deemed to constitute such attorney the authorized agent of such corporation, joint-stock company, or association, upon whom lawful and valid service may be made of all writs, process and summons in any action, suit, or proceeding, commenced by or against any such corporation, joint-stock company, or association, in any court mentioned in this section, and necessary to give such court complete jurisdiction thereof."

The question raised by the learned counsel for defendant has not been passed upon by this court. The nearest approach to the same was in the case of *Cunningham* v. *Klamath Lake R. Co.,* 54 Or. 13 (101 Pac. 213, 1099), in which, however, the conditions were different from those in the case at bar. The general rule which we think is applicable is stated in Beale on Foreign Corporations, Section 295, as follows:

"Where an agent has been designated to receive service of process, that agent may be served anywhere in the state without reference to the county in which the venue is laid. If by statute a foreign corporation is liable to suit in the county in which it does business, it can be sued in no other; though, if there is no such statute, a 'foreign corporation, not being a resident, may be sued in any county."

In *Thomas* v. *Placerville etc. Co.,* 65 Cal. 600 (4 Pac. 641), it was held that a foreign corporation doing business in the State of California had no residence within the state, and an action against it might be tried in any county designated by the plaintiff in his complaint. Private corporations are residents of the states in which they are created. They are permitted to carry on business in other states, although by both the state and federal courts they are treated as residents of the states in which they are created and nonresidents of other states: *Cunningham* v. *Klamath Lake R. Co.,* 54 Or. 13 (101 Pac. 213, 1099); *Boyer* v. *N. P. R. Co.,* 8 Idaho, 74 (66 Pac. 826, 70 L. R. A. 691). In the latter case Mr. Chief Justice QUARLES, after stating the Idaho statute, which is somewhat similar to our own, concludes by saying:

"In the absence of any statutory provision fixing the place of trial in actions against foreign corporations in any particular county, we see no reason why

such actions should not be brought and maintained in any county in this state. This, we think, is the policy and theory of our Code.''

The provisions for service contained in the act of 1903 are of mutual benefit to a foreign corporation and to litigants of the State of Oregon. Doubtless statutory service made upon a duly constituted agent would be more satisfactory than service by publication. The several provisions contained in the act apply to foreign corporations. The residence of such corporations is not changed, and they still have no legal residence within this state. It is argued with considerable force by counsel for defendant that defendant, doing business in a county in the western part of the state where the cause of action arose, should not be inconvenienced by an action in the extreme eastern part of the state. The convenience of the parties to any litigation is provided for by Section 45, subdivision 4, of L. O. L. That section provides that the court or judge thereof may change the place of trial, on the motion of either party to the action, when it appears by affidavit—subdivision 4—''that the convenience of witnesses and the parties would be promoted by such change.'' An action against a foreign corporation should be commenced in some county where the convenience of the parties to the litigation would be best served; and if for any reason such action is begun where the parties and their witnesses would be discommoded, Section 45, L. O. L., should be invoked. The act of 1903 requiring the appointment of an attorney in fact upon whom process may be served in order that a court of this state may obtain jurisdiction of a foreign corporation changed the method which had prevailed prior thereto, when there was *no statute upon the subject: Cunning-*

*ham* v. *Klamath Lake R. Co.,* 54 Or. 13 (101 Pac. 213, 1099), in which the former cases were distinguished.

Where a state makes conditions upon which foreign corporations may do business therein and provides a method whereby the courts of the state may acquire jurisdiction over them by service of process upon designated agents within the state, a foreign corporation subsequently doing business in the state is deemed to consent to the conditions and to be bound by the service of process in the manner specified by the state: *Gibbs* v. *Insurance Co.,* 63 N. Y. 114 (20 Am. Rep. 513) ; *McNichol* v. *Mercantile Agency,* 74 Mo. 457; *National Bank of Commerce* v. *Huntington,* 129 Mass. 444; *Milling Co.* v. *Pennsylvania,* 125 U. S. 181 (31 L. Ed. 650, 8 Sup. Ct. Rep. 737).

According to the provisions of the enactment of 1903 contained in Section 6726, L. O. L., in a transitory action, complete jurisdiction of a foreign corporation may be obtained by the Circuit Court for any county where an action against such corporation is commenced by service of the summons and complaint upon the resident agent appointed by the corporation, pursuant to this statute, regardless of the residence of such agent or the location of the principal office or place of business of the defendant, no matter where the cause of action arose. The language of the act quoted in part above is too broad and comprehensive to permit of any other construction, when viewed in the light of the then existing conditions and the former rulings of the courts. The appointment of such an attorney in fact is made for the whole state. The place of trial is not regulated by the residence of the agent. In case of the failure of a foreign corporation or association mentioned in the act to maintain within the state such attorney in fact the statute further provides

for valid service of process upon the Secretary of State. We conclude the Circuit Court of Multnomah County had complete jurisdiction of the defendant in this action.

8. Before any evidence was offered in the court below the defendant filed a written motion requesting the court to require the plaintiff to select which cause of action he expected to rely upon for recovery. At the close of the evidence in chief the court directed the plaintiff to make such selection. The plaintiff had one right of recovery. The defendant complains that the complaint asserts the cause of action in four ways. The main differences between plaintiff's so-called causes of action were in regard to the machinery, whether it was in motion at the time plaintiff proceeded to do the work, or whether it was started after he commenced the same, and respecting the protection or covering of the cogwheels. The initiatory pleading is not in accordance with the spirit of our Code. In drawing the complaint the pleader seems to have been in doubt as to how the evidence would develop the matter. This would naturally be explained when the story was told in a simple way on the witness-stand, and, as the trial court at the close of plaintiff's evidence directed him to elect upon which description of the matter or cause of action he would rely, we fail to see how the defendant was prejudiced. We discern no conflict with the rule in *Harvey* v. *Southern Pacific Co.*, 46 Or. 505 (80 Pac. 1061).

9. The plaintiff called as a witness in his behalf one Frederick Claude De Guare, who testified that he was a mechanical and electrical engineer; that on Saturday, July 26, 1913, he visited the sawmill of the defendant in Clatsop County, Oregon, at the place where it was claimed the plaintiff met with the accident, and

examined the sorting-table where it was claimed plaintiff was injured; that he observed the manner in which it was operated, accurately measured it, and took the measurement of the cogwheels, shafts and pulleys thereof in the section which controlled the operation of such machinery. Thereupon he was asked the following question:

"Now, Mr. De Guare, did you measure the dimensions of these various wheels, the diameters, and did you also the speed of the revolutions of this pinion, * * when you were there?

"A. Yes; I measured that speed in so far as it was possible to measure it under those conditions."

Over the objection and exception of defendant's counsel to the question, "And what was the speed, as you measured it?" the witness answered:

"This pinion [indicating] ran approximately at a speed of 300 revolutions a minute. This shaft [marking the other gear] runs slower."

Defendant assigns the admission of this evidence as error. It would seem that the witness observed the ordinary operation of the machinery. The indications were that the operation was approximately the same as when the machinery had been run before. A diagram of the sorting-table and the machinery showing the cogwheels was introduced in evidence. Plaintiff testified that the drawing accurately represented the exact condition of the machinery under the sorting table at the time he was hurt. This testimony objected to appears to have been some evidence for the guidance of the jury in determining as to the danger in working about the machine. There was but little doubt but that the work involved a risk or danger. There was no error in admitting the evidence.

10. The witness De Guare identified the drawing of the sorting-table made by him. He stated that he was 25 years old, a mechanical engineer of 8 years' experience, and had worked in similar places and in machine-shops. Over the objection and exception of defendant's counsel the witness was then permitted to testify that from his experience and knowledge of machinery he regarded that point under the sorting-table where the chains and cogs moved dangerous. Upon this error is predicated. This was not practically a controverted question. It was not the position of defendant that the place where plaintiff was injured was void of danger, but that the plaintiff went to work there in disregard of his duties, plainly implying that in so doing there was a hazard. It is a matter of common knowledge that if one's limb comes in contact with such cogwheels when in motion it will be hurt. We see no reason why expert evidence would aid the jury in this matter. We believe the only effect such testimony could have had was to convince the jury that counsel for plaintiff had but little confidence in their ordinary intelligence, and that the evidence did not influence the result. It was admitted with an instruction to the jury that such testimony was for the purpose of aiding them, but was not to be substituted for their judgment. The court charged the jury upon this point as follows:

"The laws of this state require that all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of such machinery permits. It will therefore be your duty to determine, first, whether or not the gearing in which plaintiff claims he was injured, accordingly as it was located, was dangerous, within the meaning of the laws of this state. The law, although it requires in positive terms that all dangerous machinery must be fully covered and protected to its fullest extent, fails not only

to say what machinery is dangerous or what character of protection is necessary in order to fulfill the requirement to the fullest extent, etc.   These matters are left to the courts and juries to determine under the well-recognized general rules of law pertaining to this subject.   The question as to whether or not this gearing, as it was situated, in reference to its surroundings, was or was not dangerous within the meaning of the law, is a question of fact for you to determine, the same as any other fact in this case.   The defendant in this case was bound to cover and protect only such machinery as a reasonably careful and prudent man, with full knowledge of the situation before an accident occurred, and one who would himself be liable for damage in case of error in that regard, would consider dangerous.   A machine might be a dangerous machine in one location and not dangerous at all in another location, or dangerous under certain surroundings, and not dangerous in others; and what would be a covering and protection in one case would not be sufficient in another, and, if remotely situated, it might not be required to be covered at all.   Therefore, it is for you to determine from the evidence in this case whether or not a reasonably careful and prudent man, with full knowledge of the situation before the accident occurred, would have considered this a dangerous machine, or dangerous to the defendant's employees. * * Now, if you find it was dangerous, you must then determine whether it was securely covered and protected to the fullest extent that its proper operation permitted.   Even if it were dangerous, yet if it were securely covered and protected to the fullest extent that its proper operation permitted, that is, to the extent that an ordinary careful, prudent, and experienced·man, with full knowledge of the situation, and who himself would be liable in damage in case of error, would have considered it before the accident, and the plaintiff met with the injury complained of without any fault or negligence on the part of defendant, then the plaintiff, of course, cannot recover in this action.''

We decide that under the circumstances the admission of this evidence was not reversible error.

11. Several of defendant's assignments of error relate to evidence pertaining to the earning capacity of plaintiff. Paragraph 7 of the second cause of action in the complaint alleges:

"That at the time of said injuries he [plaintiff] was capable of earning by manual labor $2 per day, and as a stenographer $50 per month; that he was a student of electrical engineering, having been matriculated as a student in the University of Washington at Seattle, Washington; and that upon the completion of his professional studies he would have been capable of earning from $3,000 to $10,000 per year."

The evidence of plaintiff and witness De Guare tended to show that plaintiff was a Hindu, 21 years of age, earning $2 per day, as a common laborer, with an expectancy of 41.53 years. Over the objection and exception of defendant, evidence was admitted tending to show the salary of a mechanical engineer to be $3,000 per year and over. It appears to have been given for the purpose of showing the general ability of plaintiff. At defendant's request the court instructed the jury that, if they found for plaintiff, in determining the amount of damages, "you have no right to take into consideration anything that the plaintiff might or could earn as an electrical engineer or what his earnings might be should he have educated himself as such. This is too remote and speculative, and is not an element of damage that you, as jurors, have any right to take into consideration."

The question of earning capacity is a difficult one. If plaintiff had made such advancement in his duties as to indicate that he was not dull or lazy, but capable of learning and energetic, it might have some bearing

upon the amount he would probably earn in his chosen calling. There is also a chance that a man may lose his position if he has one, and that he may obtain employment if he is out of it. We see no harm in informing the jury how much "pep" the plaintiff had. The fact that the plaintiff when injured was working as a common laborer at $2 per day would not prevent him from pleading and proving that he was skilled in another trade and capable of earning more: *Brown* v. *Oregon W. R. & N. Co.*, 63 Or. 409 (128 Pac. 38); 13 Cyc. 143, note; *Chicago etc. Ry. Co.* v. *Long*, 26 Tex. Civ. App. 601 (65 S. W. 882); *Missouri etc. Ry. Co.* v. *St. Clair*, 21 Tex. Civ. App. 345 (51 S. W. 666). Under the allegations and circumstances the trial court could not be expected to weigh and segregate all the evidence before it was given. Under the charge to the jury, which was at the time commended by the learned and experienced counsel for the defendant as the best he had ever heard, and in view of the amount of the verdict, it does not appear that the rights of defendant were prejudiced by the temporary admission of the evidence of which complaint is made.

12. Exception was taken to the testimony of plaintiff detailing a conversation between him and Mr. Penny, the defendant's foreman, at the time of the injury. After referring to the genealogy of each, the material part was as follows:

"I asked him, 'Why did you give me a job like this?' And he said, 'I thought it was easy for you.' * * I told him that I had meant to ask for a change of job, and he asked me what would I do with it, and he told me that if I didn't like this job he would check my time and I could go out."

There was a conflict in the evidence as to whether plaintiff was directed to work where he did at the time

of the injury. Penny was not an ordinary or general agent of the defendant company, but was the only man connected with the company who had authority over plaintiff. He was the sole authorized agent for the purpose of doing the particular acts or transactions which are alleged to have been the negligence of which complaint is made. The matter appears to have been within the knowledge and scope of his authority. The statement was made during the continuance of the agency and in regard to a transaction still pending. In the language of the foreman it will be noticed that he spoke in the present tense. The evidence was competent as tending to show where the plaintiff was required to work.

It is enacted by Section 2 of the Employers' Liability Act that:

"The manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee."

See *Northern Pac. Lumber Co.* v. *Willamette Mill Co.,* 29 Or. 221 (44 Pac. 286); Jones, Evidence, §§ 356, 356b, 357; Labatt, Master & Servant, § 2544.

In regard to this matter Penny himself testified that he did not tell the plaintiff not to go under the table at any time.

13. After the plaintiff had rested his case the defendant called as a witness on its behalf C. H. Gramm, deputy labor commissioner and factory inspector of Oregon, who identified a certificate issued by the state labor commissioner certifying that, in his judgment, the sawmill, planing-mill, and lath-mill where the plaintiff claimed he was injured was properly equipped, and that the machinery and appliances

therein were suitably covered and protected as provided by law.   The certificate was dated October 16, 1911.   The witness testified that he had inspected the mill on October 11, 1912.   On cross-examination counsel for plaintiff asked this witness the following questions:

"Q. For what purpose did you inspect that mill on October 11, 1912?

"A. On October 11, 1912, I inspected it to see that it complied with the inspection law, and to see that it was in condition so that those certificates could be renewed on the 16th of October."

Over the objection and exception of counsel for defendant to the question, "Did you find that mill in such condition that you could pass it for renewal?" the witness answered, "No."

The certificate of the labor commissioner was *prima facie* evidence only of the condition of the mill on October 16, 1911.   It was not a finality in this respect: Section 5046, L. O. L.   It was proper cross-examination for plaintiff to counteract this evidence if he could by showing whether or not the same conditions existed on October 11, 1912, four days before the accident. The question was general in its nature, and so was the evidence contained in the certificate identified and explained by this witness.   Upon redirect examination the defendant would have been entitled to have shown that the conditions referred to by the officer related to other machinery than that in question in this case. There was no error in this ruling.

14. Defendant requested the Circuit Court to charge the jury that:

"The negligence of the defendant cannot be presumed from the happening of this accident to the plaintiff; but, in addition to proving the accident, the plaintiff

must also establish by a preponderance of the testimony that such accident was caused by the sole negligence of the defendant and without fault or negligence on the part of the plaintiff; otherwise the plaintiff cannot recover at all."

The court modified this by the following instruction:

"If this was solely the plaintiff's fault, not his contributing fault, but his sole fault, there can be no recovery by him."

Defendant saved an exception to the modification. The instruction, as requested, would have precluded plaintiff from recovery if he negligently contributed to the injury. Therefore the modification was necessary and proper in order to conform the same to the Employers' Liability Act, under which contributory negligence does not preclude recovery in such an action. Taken in connection with the other instructions, the charge complained of correctly informed the jury as to the law.

The case was fairly tried, and the verdict is supported by the evidence.

We find no reversible error in the record, and the judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.