Argued September 13, reversed and remanded September 30, 1919.

## KUNTZ v. EMERSON HARDWOOD CO.*

(184 Pac. 253.)

**Pleading—Identity of Causes not Established by Plea that Other Action was for Same Amount.**

1. Identity of causes of action is not established by plea of other action pending, stating that the other action was for the same amount.

**Pleading—Plea of Identity of Parties and Subject Matter of Other Action a Conclusion of Law.**

2. It is no more than a conclusion of law for a plea of other action pending to say that it involves the same parties and the same subject matter.

---

*On duties of master and servant with regard to rule promulgated for the safe conduct of a business, see notes in 43 L. R. A. 305, and 9 L. R. A. (N. S.) 972.

Authorities passing on the duty of master to adopt rules to protect servant, or to warn him against dangers not reasonably to be apprehended, are collated in a note in 21 L. R. A. (N. S.) 89.

REPORTER.

**Pleading—Plea that New Trial was Granted After Time Allowed by Law a Conclusion of Law.**

3. Allegation of reply to plea of other action pending, that order granting new trial in such action was entered after the time allowed by law, is a mere conclusion of law.

**Abatement and Revival—Grant of New Trial After Time Limited Does not Affect Judgment of Nonsuit.**

4. The granting of new trial after the time limited by Section 175, L. O. L., as amended by act of February 18, 1911 (Laws 1911, p. 152), providing that the motion shall be determined within 60 days from the entry of judgment, and not thereafter, and if not determined within that time shall be conclusively taken and deemed as denied, does not affect the prior judgment of nonsuit, so that such action is not pending, as regards a plea of abatement to a subsequent action for the same cause, maintainable under Section 184, notwithstanding the nonsuit.

**Master and Servant—Whether Employee was at Work in Scope of Employment Question for Jury.**

5. Under the evidence, in action for death of employee, *held* that it was a question for the jury whether he, in going from his place as an off-bearer for a rip-saw to another place in the same room to put on a belt was within the scope of his employment.

**Negligence—Contributory Negligence Reduces Recovery Under Employers' Liability Act.**

6. For an employee to go from his place as an off-bearer for a rip-saw to another place in the room to put on a belt, in doing which he was killed, was at most contributory negligence, which under Employers' Liability Act, Sections 1, 4, 6, merely reduces recovery for his death from failure of the employer to use every means practicable for protecting life from machinery.

**Master and Servant—Evidence of Want of Rules in Factory not Objectionable for Remoteness.**

7. It was permissible, in an action for death of employee in putting on a belt, to show that eight months before the accident there were no rules or regulations in the factory regarding adjustment of the belt, objection of remoteness going rather to its weight than its competency.

**Master and Servant—Disregard of Warning Evidence of Contributory Negligence.**

8. As tending to show contributory negligence, as basis for reduction of damages under Employers' Liability Act, master may show that when deceased started to put on belt he was warned, by the man in charge of the saw at which he worked, not to put it on, but to leave it alone.

**Master and Servant—Labor Commissioner's Certificate Evidence That Employer Complied With His Duty Within Factory Act.**

9. Defendant, in an action under Employers' Liability Act for death of a servant in putting on a belt, was entitled to have admitted the labor commissioner's certificate for the year, that the factory conformed to the Factory Act, Section 5040, L. O. L., et seq., as

*prima facie* evidence of performance of master's duties to the extent required by the Factory Act.

**Death—Damages Recoverable Under Employers' Liability Act Limited to Prospective Earnings.**

10. Recovery for death under Employers' Liability Act, Section 4, is limited to the net amount which decedent would probably have saved from his earnings considering his age, health, ability, habits of industry, and mental and physical skill, so far as affecting his capacity for earning or rendering services or accumulating.

[As to mode of estimating value of life, see note in 12 **Am. St. Rep.** 379.]

**Evidence—Rules of Employer not Printed may be Shown by Parol.**

11. Anyone knowing the rules regulating employment and duties of operatives in a factory may testify thereto, they not being written or printed, and the law not requiring that they should be.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

The plaintiff is the widow of George Kuntz, who was employed by the defendant as an off-bearer for a rip-saw in its factory. This machine was situated in what is designated in the pleadings as the dimension-room. In a room above was another saw known as the trimmer-saw. This latter machine was operated by means of a belt running from a small pulley on it down to a large pulley about thirty-two inches in diameter by ten inches face, mounted on a line shaft about forty-two inches above the floor in the dimension-room. This pulley was situated about ten feet from where the decedent stood in doing his work for which the pleadings admit he was employed. It is alleged in substance in the complaint that the shafting for pulleys involved was out of alignment, by reason of which the belt came off the pulley, frequently; that there was no guard over the pulley, nor belt shifting device; that the defendant had failed to provide any rules for the conduct of the work or any system of signals whereby the trimmer-saw operator could notify the engineer in charge of the motive power of the mill to slow down the ma-

chinery while the belt was being replaced; that the defendant was careless in failing to warn the decedent about the danger incident to the work of putting on the belt, and generally that the defendant failed to use every device, care and precaution which was practicable to be used for the protection of the life and limb of its employees. It is said also in the complaint that it was customary for the trimmer operator on the floor above, whenever the belt came off the pulley, to direct the decedent to replace it, all of which was known to and acquiesced in by the defendant; that on June 19, 1917, while the decedent was working as such off-bearer, the belt came off and the trimmer operator called down to him to put it on again, in pursuance of which he attempted to do so and without having any means for the purpose, took a stick with which he attempted to adjust it, but by reason of the great speed with which the pulley was running and because it was not guarded and there was no belt shifting device, the stick was caught by the pulley and hurled with great force against his chest, resulting almost immediately in his death.

It is charged that the defendant had elected not to conform to the legislation known as the Workmen's Compensation Act, or to avail itself of the benefits thereunder. After alleging the expectancy of the decedent and his earning capacity, the complaint concludes with an allegation of the damages suffered by the plaintiff.

The answer admits the capacity in which the decedent was employed and that he died as the result of injuries received while so employed. After further admitting that the defendant had elected not to conform to the workmen's compensation law, the other allegations of the complaint are denied. Affirmatively

the answer imputes the injuries and the death of Kuntz solely to his own carelessness and negligence in that he violated the rules of the defendant by leaving his place of work and going beyond the contract and scope of his employment for the purpose of replacing the belt, for which latter service he was not hired or employed. Further, his death is imputed to his contributory negligence and it is alleged, too, that his demise was, so far as the defendant is concerned, wholly accidental, unavoidable, unforeseen and not preventable by the exercise of the lawful degree of care.

It is further stated:

"That prior to the commencement of the above action the plaintiff commenced an action in the above-entitled court against this defendant praying for the same amount claimed in this action."

Under this head the answer goes on to say that in the preceding action a judgment of nonsuit was granted against the plaintiff and in favor of the defendant, whereupon the plaintiff filed a motion for a new trial, which was allowed February 19, 1918, and the defendant appealed to the Supreme Court of this state, which appeal is still pending. Finally, in this defense it is said:

"That said action involves the same parties and the same subject matter and until the same has been abated or dismissed or otherwise disposed of this action is not maintainable and constitutes a bar to the present action."

The new matter of the answer is traversed by the reply and respecting the plea of *lis pendens* the plaintiff, finally pleading, alleges:

"The truth and fact to be that said cause was partly tried, that a nonsuit in favor of defendant was erroneously granted by the court, contrary to the law gov-

erning said cause, that thereafter said nonsuit was set aside but that the order setting the same aside was made and entered after the time allowed by law; that from said order the defendant appealed to the Supreme Court, that said appeal was only taken for the purpose of delay and for the further purpose of keeping the plaintiff out of her just rights and not for the purpose of determining any legal rights of the defendant, and that said appeal is wholly void by reason that no appeal lies from a void order; that no action is now pending between the parties to this litigation except this action, that the former action has been wholly disposed of.''

The Circuit Court denied the motion for nonsuit at the close of the plaintiff's case and the trial resulted in a verdict and judgment in favor of the plaintiff, from which the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the names of *Mr. Chester A. Sheppard* and *Mr. John E. Owens,* with an oral argument by *Mr. Sheppard.*

BURNETT, J.—1-4. In respect to the plea of *lis pendens,* both the answer and the reply are affected by a common error, that of pleading conclusions of law rather than the facts from which a court might be enabled to reach the desired deduction. It is not sufficient in the answer to state merely that the former action was for the same amount. The identity of causes of action is not established by equality of the amounts demanded. Neither is it more than a conclusion of law to say that the pending action involves the

same parties and the same subject matter. The issues in the former case should be recited with sufficient clarity so that the court might be enabled to determine that the two actions were identical. In the reply it is not enough to say that the order granting a new trial was entered after the time allowed by law. The pleading does not inform us of the date of filing the motion for a new trial or of granting the same. Hence we are unable to discern from the reply whether the order was entered out of time or not. The plea of *lis pendens,* therefore, does not state facts sufficient to constitute a defense and it is enough to say in that regard that it can avail the defendant nothing here. At the argument, however, it was conceded that the order allowing the new trial was made sixty-one days after the motion was filed. Treating of such a motion, Section 175, L. O. L., as amended by the act of February 18, 1911, provides that:

"The motion shall be heard and determined during the term, unless the court continue the same for advisement, or want of time to hear it, but said motion shall be heard and determined by the court within sixty days from the time of the entry of judgment, and not thereafter, and if not so heard and determined within said time, the said motion shall be conclusively taken and deemed as denied."

This statutory disposition of such a motion is imperative and leaves no room for any other construction than that the former action ended in a judgment for nonsuit, which does not bar another action for the same cause: Section 184, L. O. L.

5. The principal contention of the defendant, as stated in the briefs, is that as the decedent, having left his regular place of work as off-bearer while undertaking to put on the belt, was a mere volunteer and was

acting beyond the scope of his employment, a nonsuit was proper or a directed verdict should have been granted. Under the initiative act of November 8, 1910, known as the Employers' Liability Act, all owners, contractors, subcontractors, corporations or individuals whatsoever engaged in the operation of any machinery are charged with the duty of protecting the same and covering it securely to the fullest extent that the proper operation thereof permits, and the act requires that all machinery other than that operated by hand power, whenever necessary for the safety of employees in or about the same or for the safety of the general public, shall be provided with a system of communication by means of signals, so that at all times there may be communication between the employees and the operators of the motive power. The first section of the act closes with this provision:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Section 4 of the act as it stood when the occurrences narrated in the pleadings happened reads thus:

"If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother or father, as the case may be, shall have a right of action without

any limit as to the amount of damages which may be awarded.''

Section 6 declares that:

''The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage.''

It was in evidence that when the belt came off, anybody who happened to be there put it on and one witness said, ''I guess everybody around the mill has put it on.'' Another witness said that the decedent had put on the belt. So far as that act being within the scope of his employment is concerned, the case is governed in principle by *Beaver* v. *Mason-Ehrman & Co.*, 73 Or. 36 (143 Pac. 1000, 7 N. C. C. A. 876). In that case the plaintiff's decedent was a boy who was employed as a messenger in and about a seven-story building occupied by the defendant firm. He received his fatal injuries while he was attempting to operate an elevator. There was some evidence to the effect that he had been seen by other employees running the elevator before the accident. There was other testimony on behalf of the defendant that those in authority over him had warned him not to meddle with the elevator and he had been told to keep away from it. But it was held that the court could not declare as a matter of law that it was not within the measure of his duties, Mr. Justice RAMSEY saying:

''Under the evidence it was a proper question for the determination of the jury, as it is shown that he did operate it frequently and the defendant's officers may have had knowledge thereof and acquiesced therein. Under the issues and the evidence it was for the jury and not the court to determine that question. We cannot say that there was no evidence to support the contention that they allowed him to operate it.''

By analogy, the same principle is taught in *Wheeler* v. *Nehalem Timber Co.,* 79 Or. 506 (155 Pac. 1188). Some loggers in the employ of the defendant were working in the woods during cold weather. Some of them had built a fire in a decayed stump for the purpose of warming themselves. No rule had been established respecting that practice, but the foreman knew of it and did not forbid it. While the plaintiff was engaged in his labor this burning stump fell upon him and injured him. The holding was that there was enough evidence to present to the jury the question of whether or not the kindling of the fire promoted the employer's business. See, also, *Stool* v. *Southern Pacific Co.,* 88 Or. 350 (172 Pac. 101), in which a section-hand was held to be within the scope of his employment while walking on the track a few minutes before the time to begin work and proceeding toward the place where he was at work the day before and where he expected to continue his labors.

6. It is not necessary, however, to rest the decision of this case exclusively on the proposition that the act of the decedent in going from his place as an off-bearer for the rip-saw to another point in the same room to put on the belt was within the scope of his employment. The Employers' Liability Act requires that the owners of such machinery shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the machine. That duty is extended not to any particular life or limb, but generally, the only limitation being the necessity for preserving the efficiency of the machine. It has often been held that a violation of a statutory duty of this kind is negligence *per se*. The

section giving a cause of action to the widow of a decedent bases that right upon the general fact that:

"If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable. * * "

It is not the life of any particular employee whether careful or negligent which is to be protected; but the language is general and comprehensive so that if there shall be any loss of life the action will lie. Still further, it is said that the contributory negligence of the individual injured shall not be a defense, but may be taken into account by a jury in fixing the amount of damage. The most that can be said of the act of Kuntz in leaving his station and going to put on the belt is that it was negligent on his part, and this is no defense but only goes to lessen the amount of recovery for the accident. The defendant gave evidence in substance that it had provided a millwright whose duty it was to do that kind of work. Let us suppose that the millwright had gone to put the belt in position, had operated like Kuntz did and had been injured like he was. A cause of action would have at once arisen in favor of the millwright's widow, for the reason that the neglect of the defendant to comply with the statute, if proved, was negligence *per se* and entered into the injury as an ingredient thereof. The difference between the supposed case and the instant one is only in degree. In each case all that is left to the defendant shown to be guilty of a violation of the statute fastening upon it the charge of negligence *per se* is to lessen the amount of recovery by showing negligence of the decedent. The principle is the same in both cases.

The old rule was that an employee assumed the ordinary risks of his employment and that if his own negligence contributed to his injury the law would not apportion the fault, but would deny a recovery. The obvious purpose of the employers' liability law was to change this rule and make a more equitable adjustment of the casualties of hazardous occupations. In order to escape liability the defendant must be without fault and the fair adjustment of responsibility if he is negligent is worked out by reducing the amount of recovery in proportion to the negligence of the injured party. The greater his negligence, the more should the recovery be reduced, even to a nominal sum if his fault should require it; but that is a question for the jury to determine.

7, 8. Complaint is made that the court was in error in allowing a witness to testify that he had inspected the factory of the defendant in November preceding the occurrence of the accident in June and that there were no rules or regulations regarding the adjustment of the belt in question. The objection was that it was not part of the *res gestae,* and too remote. It was indeed not part of the *res gestae,* but it was permissible to prove that there were no rules at that time and that the same condition continued up to and including the time of the accident. The objection of remoteness goes rather to the weight of the testimony than to its competency. The trial court refused an offer of the defendant to show that at the time Kuntz started to put on the belt he was warned by the man in charge of the rip-saw, with whom he worked, not to put on the belt but to leave it alone. In this the court was in error. At least it was competent to show that he went there in spite of the remonstrance of his fellow-workmen, as it would indicate a recklessness or want

of care on his part, tending to support the charge that he was negligent, with a view of reducing the claim for damages.

9. The defendant sought to have admitted in evidence a certificate of inspection given it by the state labor commissioner, in force and effect for one year after November 9, 1916, to the effect that in the judgment of the commissioner the factory where the accident happened conformed to what is known as the Factory Act, filed in the office of the Secretary of State February 25, 1907. That act requires the owner or individual operating a factory, mill or workshop where machinery is used, to provide and maintain in use belt-shifters or other mechanical contrivances for the purpose of throwing on or off belts or pulleys while running, where the same are practicable with due regard to the nature and purpose of said belts and the danger to employees therefrom, and further requires reasonable safeguards for gearing, belting, shafting, couplings and machinery of other or similar descriptions which it is practicable to guard and with which the employees are liable to come in contact while in the performance of their duties, together with other precautions largely in the same line with the Employers' Liability Act: Section 5040, L. O. L.  It is required in Section 5046, L. O. L., that:

"Whenever upon any examination or re-examination of any factory, mill or workshop, store or building or the machinery or appliances therein, to which the provisions of this act are applicable, the property so examined and the appliances therein conform, in the judgment of the said labor commissioner, to the requirements of this act, he shall thereupon issue to the owner, lessee or operator of such factory, mill or workshop * * a certificate to that effect, and such certifi-

93 Or. —37

cate shall be *prima facie* evidence as long as it continues in force of compliance on the part of the person, firm, corporation or association to whom it is issued, with the provisions of this act.''

As indicated by its title, the Factory Act is designed to provide ''for the protection and health of employees in factories, mills or workshops where machinery is used,'' etc. In the title to the Employers' Liability Act we find that it is to provide ''for the protection and safety of persons engaged * * about any machinery or in any dangerous occupation,'' etc. The requirements noted are common to both statutes. ''Things equal to the same thing are equal to each other.'' Consequently, if the certificate mentioned is *prima facie* evidence that, for instance, the owner of a plant has provided reasonable safeguards for the machinery therein under the Factory Act, the same document is *prima facie* evidence of compliance with the same requirement under the employers' liability law. It is true that the latter enactment compels the use of every practicable safety device ''without regard to additional cost,'' but this does not establish any more stringent rule than that imposed by the earlier statute. The limitation stated by the Factory Act is practicability ''with due regard to the ordinary use of such machinery and appliances and the dangers to employees therefrom.'' Cost is not considered as an element in the canon of duty. Its essential ingredients are the use, not cost, of the machinery together with the safety of the operatives. The factory statute, therefore, prescribes a rule of evidence of which the defendant was entitled to avail itself and the court was in error in refusing to receive the certificate: *Ramaswamey* v. *Hammond Lumber Co.,* 78 Or. 407 (152 Pac. 223).

10. Another assignment of error is that the court was wrong in directing the jury that the plaintiff was entitled to recover such sum of money as would wholly compensate her for the pecuniary loss suffered by her, limited only by the 'amount asked for in the complaint. The rule established by this court in *McClaugherty* v. *Rogue River Electric Co.*, 73 Or. 135 (140 Pac. 64, 144 Pac. 569), is in substance that the recovery is limited to the net amount which the decedent would probably have saved from his earnings by his skill or bodily labor in his trade or calling, taking into consideration his age, health, ability, habits of industry and mental and physical skill, so far as they affect his capacity for earning money or rendering services to others, or accumulating property. The instruction on that point should have conformed substantially to the rule thus established.

11. The court was right in refusing to grant a nonsuit or to direct a verdict for the defendant and in its admission of the evidence respecting the lack of rules and regulations a few months before the occurrence of the accident. Having in mind the new trial to be awarded, it is proper to say that the court ought to have been more liberal in admitting evidence about the rules regulating employment and duties of operatives in the defendant's mill. The law does not require them to be in writing and unless they are written or printed, involving the principle that the document itself is the best evidence of its contents, anyone who knows the rules may testify to what they are. There was error in excluding evidence of the warning given the decedent to stay away from the belt, in not admitting the certificate of the state labor commissioner and in the court's definition of the measure of damages.

The judgment is reversed and the cause remanded for a new trial.          REVERSED AND REMANDED.

HARRIS, J., Concurring Specially.—I agree in all the opinion written by Mr. Justice BURNETT except that portion which relates to the certificate issued by the labor commissioner. I do not concur in all that is said about the certificate although I do assent, on the authority of *Ramaswamy* v. *Hammond Lumber Co.*, 78 Or. 407, 426 (152 Pac. 223), to the conclusion that the defendant was entitled to introduce the certificate as evidence.

The Factory Inspection Act was adopted by the legislature in 1907 and is codified in Sections 5040 to 5057, L. O. L., inclusive. In 1911 the legal voters of the state exercised the power of the initiative and enacted the Employers' Liability Act: Chapter 3, Laws 1911. The Factory Inspection Act provides for the issuance of a certificate by the labor commissioner and this certificate is, by that statute, declared to be *prima facie* evidence of compliance with the provisions of the act. The Employers' Liability Act makes no provision for the issuance of a certificate.

The Employers' Liability Act is wider in its scope and more exacting in its requirements than is the Factory Inspection Act; and consequently a certificate issued by the labor commissioner under the authority of the Factory Inspection Act is only *prima facie* evidence that the employer has gone as far, in the performance of his duty, as is required by the Factory Inspection Act: 5 Labatt's Master & Servant (2 ed.), 5670. Whenever and wherever the Employers' Liability Act adds to the duty placed upon the employer by the Factory Inspection Act, the certificate is no evidence at all that the employer has performed such

added duty. The certificate is *prima facie* evidence of performance to the extent and only to the extent that the Factory Inspection Act requires performance.

BEAN and JOHNS, JJ., concur.