Argued June 5, reversed and remanded July 17, petition
for rehearing denied September 3, 1975

MEYER ET AL, *Appellants, v.*
FORD INDUSTRIES, INC., ET AL, *Respondents.*
538 P2d 353

*Charles Robinowitz,* Portland, argued the cause and filed the briefs for appellants.

*Richard H. Williams,* Portland, argued the cause for respondents. With him on the brief were Wayne Hilliard and Dezendorf, Spears, Lubersky & Campbell, Portland.

TONGUE, J.

This is an action for statutory damages under ORS 57.246(3) because of defendants' refusal of plaintiffs' request, as stockholders, to inspect certain documents claimed by them to be corporate "books and records of account" for the purposes of that statute. Plaintiffs seek damages equal to 10 per cent of the value of their stock multiplied by eight, representing what they claim to have been eight "independent, separate inspection requests."

The trial court sustained defendants' motion to strike the allegations of plaintiffs' complaint listing the eight "records" for which plaintiffs' requested inspection was refused and the allegations requesting 80 per cent statutory damages. Upon plaintiffs' re-

fusal to plead further an order of dismissal was entered, from which plaintiffs appeal.

1. *Plaintiffs requested "records"-for the refusal of which they are entitled to statutory damages under ORS 57.246(3).*

Plaintiffs say that at common law a stockholder in a corporation has the right to inspect all corporate books, records, contracts, correspondence and other documents and data of any kind which have any relevance to a determination of the value of his stock. Plaintiffs contend that by the adoption in 1953 of the Model Business Corporation Act, including ORS 57.246(3),[1] the Oregon legislature intended to "expand and supplement" the common law inspection right of stockholders by providing a remedy of statutory damages to replace the less effective common law remedy of mandamus, but did not intend by this statute to "restrict and qualify" that common law right. It follows, according to plaintiffs, that because they could have brought mandamus proceedings to enforce their common law and statutory right to inspect all the documents demanded by them, they are also entitled to demand statutory damages under ORS 57.246 for defendants' refusal to permit them to inspect such documents.

Defendants contend, on the contrary, that the words "books and records of account" as used in ORS 57.246(3) must be given their "ordinary meaning," which is limited to "regularly maintained ac-

[1] ORS 57.246(3) provides:

"Any officer or agent who, or a corporation which, shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of 10 percent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law. * * *"

counting records," particularly in view of the fact that plaintiffs seek to enforce a penalty, and one "governed solely by statute," with the result that they "are not aided by cases discussing shareholder's common law right of inspection enforceable by writ of mandamus" and with the further result that they had no right to claim statutory damages for refusal to permit inspection of the documents demanded because such documents were not "books and records of account" for the purposes of this statute.[2]

The documents which defendants refused to permit plaintiffs to inspect, according to the allegations of their complaint, were the following:

"3. Agreement(s) relating to the purchase of Marcom, Inc.;

"4. Agreement(s) with Colonial Leasing Corp.;

"5. A preliminary year end statement of Ford Industries dated April 16, 1971 with attached commentary sheet;

"6. Records relating to the investment of $158,390 which Ford Industries contributed to its employee pension plan;

"7. Papers and written documents relating to the issuance and computation of a 9 percent $1.5 million convertible debenture to Roseburg Lumber Co.;

"8. Agreements between Ford Industries and any former employee of Ford Industries including, but not limited to, Herbert L. Brown;

---

[2] Defendants cite authorities in support of the contention that ORS 57.246(3) is a penal statute and thus must be construed so as to give its terms their "ordinary meaning."

Defendants quote the following definitions of "book of account" from Random House Dictionary of the English Language (Unabridged ed 1966) 170:

"'1. any journal, ledger, and supporting vouchers included in a system of accounts.

"'2. books of account, the original records and books used in recording business transactions.'"

"9. Records relating to the increase in a loan from $1,369,492 to $1,500,000 from Roseburg Lumber Co. to Ford Industries between July 31, 1970 and October 26, 1970; and

"10. Any written documents relating to an offer to purchase, merge with or underwrite any portion of Ford Industries."

As stated by 5 Fletcher Cyclopedia Corporations (Perm ed 1967) 881-83, § 2239:

"The right of the stockholder at common law extends to all the books, papers, records, federal reports, and other data of the corporation as to assets, liabilities, contracts, operations and practices, including correspondence between the controlling officers relating to the internal affairs of the corporation. * * *"

In *Rosentool v. Bonanza Oil and Mine Corp.*, 221 Or 520, 533, 352 P2d 138 (1960), we quoted with approval from our previous decision in *Bernert v. Multnomah Lbr. & Box Co. et al*, 119 Or 44, 48, 247 P 155, 248 P 156 (1926), as follows:

" 'They [the stockholders] are the owners of the corporate property. The directors and other officers of the corporation are their agents and trustees. Is it not proper for the beneficiaries to inquire into the administration of the trust?' "

As previously stated, in 1953 the Model Business Corporation Act was adopted in Oregon including its provision (as quoted above)[9] to the effect that upon refusing the request of a stockholder to inspect "books and records of account," among other things, a corporation is liable for a penalty of 10 per cent of the value of the stock of the stockholder. It has been stated that the purpose of this section of that Model Act was not only to "preserve" the common

---

[9] See Oregon Laws 1953, ch 549, § 46(3), ORS 57.246(3), as set forth above in note 1.

law right of stockholders to examine books and records of account,⑨ but also to "enlarge" that right, which had been "hampered by the delay and expense which often accompanied enforcement of the right" by mandamus.⑨ Nevertheless, the official "Comment" to this section of the Model Business Corporation Act says nothing directly about the scope and nature of the records intended to be made subject to the provision of that Act for statutory damages, but states only that under the Act a stockholder "is entitled to inspect all relevant *books* unless an improper purpose can be shown."⑨

According to Fletcher, *supra,* 881-83, § 2239:

"* * * [t]he statutory right depends on the language of the statute, and the judicial interpretation of the right conferred thereunder. Generally speaking, the right of the stockholder extends to all books, papers, contracts, minutes, books or other instruments from which he can derive any information that will enable him to better protect his interests. * * *"

As also stated by Fletcher, *supra,* 792, § 2215:

"* * * [S]ome statutes are general in terms and under them stockholders are given the broad right to examine and inspect the books, records and papers of the corporation at reasonable and proper times, other statutes differ from the common law rule in that they contain specific provisions as to the inspection of certain books or records only, * * *."

The genesis of the Model Business Corporation

---

⑨ Garrett, History, Purpose and Summary of the Model Business Corporation Act, 6 Bus Lawyer 1, 4 (1950).

⑨ 2 Model Business Corporation Act Annotated 129 (1971), "Comment" on § 52 of that Act. See also 2 Hornstein, Corporation Law and Practice 124-25, § 611 (1959).

⑨ 2 Model Business Corporation Act, *supra* note 5.

Act as adopted in Oregon, including this provision of the Act, was the Illinois Business Corporations Act.[7] In turn, this provision of that Illinois statute was based upon an earlier Illinois statute which had been the subject of considerable litigation.[8]

In cases involving the interpretation of the terms of a statute which are not clear and unambiguous it has been said that if the legislative intent can be clearly ascertained such terms should be so construed so as to give effect to that intent, regardless of their literal meaning. See *State Highway Comm. v. Rawson*, 210 Or 593, 610-11, 312 P2d 849 (1957), and cases cited therein. In that case we also quoted, with approval, from the dissenting opinion of Mr. Justice Lusk in *Berry Transport, Inc. v. Heltzel*, 202 Or 161, 184, 272 P2d 965 (1954), as follows:

"'* * * A court which treats a particular provision of a statute as though it were a waif without known parents, relatives or associates, is likely to miss the meaning of the particular provision. * * *'"

[7] See R. Garrett, Model Business Corporation Act, 4 Baylor L Rev 412, 424 (1952), stating that:

"The initial draft of the Model Act was based upon the Illinois Business Corporation Act of 1933. The Chicago members of the Committee had been members of the Corporation Law Committee of the Chicago Bar Association since 1930, and were three of the four draftsmen of the Illinois Act. Quite naturally, therefore, when they were charged with the duty of drafting a Model Act, they turned to the Illinois Act as a model for the Model. The Illinois Act had then been in use for more than thirteen years, and they were familiar with its practical operation and administrative experience. They had participated in all of the problems of interpretation and amendments that had arisen. Their principal contribution to the 1946 edition of the Model Act was the elimination from the Illinois Act of purely local constitutional restrictions and the complicated provisions for the assessment and collection of incorporation fees and franchise taxes. * * *"

[8] See *Morris v. Broadview, Inc.*, 385 Ill 228, 52 NE2d 769 (1944). See also cases cited in following discussion.

■ As also held by this court in *State ex rel Western Seed v. Campbell,* 250 Or 262, 270-71, 442 P2d 215 (1968):

"\* \* \* When one state borrows a statute from another state, the interpretation of the borrowed statute by the courts of the earlier enacting state ordinarily is persuasive. See *Fleischhauer v. Bilstad et al,* 233 Or 578, 379 P2d 880 (1963) (presumption that other state's interpretation is governing); *School Dist. No. 1 v. Rushlight and Co.,* 232 Or 341, 345, 375 P2d 411 (1962). \* \* \*"⑨

Such a rule of statutory construction may not be directly in point in relation to the adoption of a so-called "model" or "uniform" act. Nevertheless, we find the decisions of the Illinois courts in their interpretation of the Illinois statute, as next discussed, to be highly persuasive, if not controlling, upon the question of the intended meaning, scope and application of the term "books and records of account."

In 1872 Illinois adopted a General Corporation Act, Laws 1871-72, p 246, § 13. Section 13 of that Act provided that:

"\* \* \* every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the *records and books of account* of the corporation." (Emphasis added)

That Act was amended in 1919 (General Corporation Act, Laws 1919, p 312, § 38; Smith's Ill Rev Stat 1921, ch 32, § 38). The term "records and books of account" remained. The 10 per cent penalty provision was added. In 1933 Illinois adopted a Business

---

⑨ In that case, involving the Oregon "long arm" statute, which had been "copied from the Illinois statute," we recognized (at 271) that the Illinois statute "was intended to exploit the outer limits of due process in aid of Illinois litigants" and, accordingly, held that the Oregon statute should also be interpreted "as broadly as constitutional due process will permit."

Corporation Act which included a provision for inspection of "books and records of account"—the same term as in the Model Business Corporation Act, as adopted in Oregon in 1953.[@] In interpreting that statutory provision, as well as its predecessor, the Illinois courts appear to have held that it is coextensive with the common law right of inspection.

Thus, in *Stone v. Kellogg,* 165 Ill 192, 46 NE 222 (1896), the Illinois Supreme Court rejected a contention that the statutory provision for inspection of "records and books of account" did not extend to "all papers, contracts and correspondence," holding (at 227) that:

"* * * The objection that the right to examine the records and books of the company does not embrace the right to examine the contracts and other papers mentioned in the pleadings we regard as without force. * * *"

Similarly, it was held in *Rodger Ballast Car Co. v. Perrin,* 88 Ill App 323 (1899), that under the same statutory provision stockholders are entitled to inspect "books and papers" of a corporation.

In *Maremont v. Old Colony Life Ins. Co.,* 189 Ill App 231, 234 (1914), although not directly in point on its facts, it was held that:

"* * * The policy of the State, as expressed in the statute and in the opinion [*Stone v. Kellogg,* 165 Ill 192, 46 NE 222 (1896)], is in favor of the widest publicity among stockholders concerning corporation affairs.

"It is contended on the part of the appellants that the stock registers and stock transfer books of a corporation are not within the statute. They are certainly not 'books of account' of the corpo-

---

[@] See Laws 1933, p 308, § 45; Smith-Hurd Ill Rev Stat 1933, § 157.45. The Illinois Act was subsequently amended in 1941 and 1947. Laws 1941, Vol I, p 421, § 1; Laws 1947, p 678, § 1.

ration, but they are, in our opinion, a part of 'the records of the corporation.'"

*Miller v. Spanogle,* 275 Ill App 335 (1934), involved the 1933 Illinois Business Corporation Act, which referred by terms to "books and records of account." The scope of that provision was not directly in issue, but the court held (at 340) that:

"At common law every stockholder of a corporation has a right by reason of his interest therein to inspect and examine its books and papers if he asserts the right at a reasonable time and place and for proper purposes, Fletcher Cyc. Corp. (1st Ed.) sec. 2810; 14 C. J. 853, sec. 1300, and it is this right which the Act of 1933 preserves and declares. * * *"

To the same effect, see *Wise v. H. M. Byllesby & Co.,* 285 Ill App 40, 1 NE2d 536, 539 (1936).

In *Vigran v. Hamilton,* 321 Ill App 541, 53 NE2d 250 (1944), although the scope of the same provision of the Illinois statute was not directly discussed, it was held that a stockholder had the right to obtain from the books and records of a corporation "information and extracts concerning the manner in which its business had been conducted and transactions in which it had engaged."

These Illinois cases interpreting the provisions of the statute of that state were decided prior to the adoption of the Oregon Business Corporation Act in 1953. Since then, in *Winger v. Richards-Wilcox Manuf. Co.,* 33 Ill App 2d 115, 178 NE2d 659 (1961), a stockholder demanded the right to inspect records which included "officers' and directors' salaries, bonuses, retirement plans and expense accounts, company-owned-aircraft logs." In sustaining the right of the stockholders to inspect such records the Illinois court held that:

"* * * He has a right to know what its man-

agement is doing, what its practices and policies are, what expenditures are being made, what his stock is worth, the reasons for a dividend policy that depresses the value of his stock and decreases its marketability, whether the salaries of those who are in control—and their income tax brackets— may be the reason for the small dividends, * * *."

■ Based upon our examination of the foregoing decisions by the Illinois courts in deciding the intended scope and application of the statutory provisions which were the antecedents of the similar provision of the Oregon Business Corporation Act, it appears that the term "records and books of account," as in the earlier Illinois Act, and the term "books and records of account," as in the subsequent Illinois Business Corporation Act (upon which the Model Business Corporation Act was based), were both held by the Illinois courts not to be limited to "books and records of account" in any "ordinary," literal or otherwise limited sense, but to be the subject of a broad and liberal construction so as to extend to all records, contracts, papers and correspondence to which the common law right of inspection of a stockholder may properly apply.

We believe that the same broad and liberal interpretation of this provision of the Model Business Corporation Act was intended by the members of the committee which drafted that provision and which included three of the four persons who drafted the Illinois Act.[20] We also believe it is proper to assume that upon the adoption of that Model Act the Oregon legislature intended that this provision of that Act should be interpreted and applied in the same manner as intended by the drafters of that Model Act.[21]

[20] See note 7, *supra*.

[21] For cases from other states under other statutes, see

For these reasons, and upon considering the nature of the various records, contracts, and other documents demanded for inspection by these plaintiffs, as previously described, we hold that under the provisions of ORS 57.246 they had the right,[9] subject to the defenses provided by that section of the statute, to inspect all of such items.

Accordingly, we hold that upon proof by plaintiffs of a refusal to permit such an inspection and in the absence of proof by defendants of such a defense, as provided by ORS 57.246(3), plaintiffs would be entitled to demand payment of a 10 per cent penalty as provided by the terms of that statute. It follows that the trial court erred in sustaining defendants' mo-

---

*Smith v. Flynn*, 275 Ala 392, 155 So 2d 497 (1963); *Birmingham News et al v. State ex rel Dunston*, 207 Ala 440, 93 So 25 (1922); *Morton v. Rogers*, 20 Ariz App 581, 514 P2d 752, 757 (1973); *Tucson Gas and Electric Co. v. Shuntz*, 5 Ariz App 511, 428 P2d 686 (1967); *Otis-Hidden Co. v. Scheirich*, 187 Ky 423, 219 SW 191 (1920); *State ex rel McClure v. Malleable Iron Range Company*, 177 Wis 582, 187 NW 646 (1922); *State ex rel Lowell Wiper Supply Company v. Helen Shop, Inc.*, 211 Tenn 107, 362 SW2d 787 (1962); *Goldman v. Trans-United Industries, Inc.*, 404 Pa 288, 171 A2d 788 (1961); 2 Hornstein Corporation Law and Practice, *supra*, note 5 at 129, § 612. Lattin on Corporations 346-48, § 88 (1971). See also K. Starr and T. Schmidt, Inspection Rights of Corporate Stockholders, 26 U Fla L Rev 173, 177-78 (1974). But see *Susquehanna Corp. v. Gen. Refractories Co.*, 356 F2d 985 (3d Cir 1966); and *State ex rel Jones v. Ralston Purina Company*, 358 SW2d 772 (Mo 1962).

[9] ORS 57.246(3) provides that:

"* * * It shall be a defense to any action for penalties under this section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or had improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his demand."

tion to strike the allegation of plaintiffs' complaint listing the various "records" for which inspection was allegedly refused.

2. *Plaintiffs are entitled to 10 per cent statutory damages, and no more, under the allegations of their complaint.*

■ Plaintiffs' complaint alleges that "On or about May 14, 1971, and thereafter plaintiffs made a written demand" for these eight items of "books and records of account" and then goes on to allege that:

> "Each of the plaintiffs is entitled to a penalty from defendants in the amount of 10 percent of the value of his shares on May 14, 1971 multiplied by eight which represents the number of items plaintiffs requested to examine, inspect and copy and were refused by defendants."

Plaintiffs concede that:

> "Neither case law nor the statute indicate whether a stockholder should be able to secure a statutory penalty in excess of ten percent where he makes a request for separate and independent books and records."

but contend, however, that:

> "* * * As a matter of public policy, defendants who refuse more than one type of record should be exposed to a greater penalty so as not to encourage blanket denials of requests and to encourage stockholders to consolidate requests into one written notice. The trial judge can prevent a stockholder from improperly separating requests for books and records by ruling as a matter of law on a case by case basis whether records are separate and independent."

To the contrary, defendants contend that:

> "If plaintiffs are entitled to collect anything, they may not calculate the penalty by multiplying

it times the number of documents identified in a single demand. The statute imposes a penalty for each refusal of a demand, not for each document refused. * * *"

We agree with this contention. Indeed, plaintiffs concede that "there should be a legal safeguard that the requests be separate and independent from any previous requests."

From the allegation of plaintiffs' complaint and from their brief on this appeal it appears that there was but one demand and refusal and that the basis for plaintiffs' claim of multiple damages is that the demand which was refused was a demand for the inspection of eight separate items of records. Under these allegations we hold that regardless of whether defendants improperly refused to permit the inspection of these items of records, plaintiffs are entitled by the terms of ORS 57.246(3) to no more than the statutory penalty of 10 per cent of the value of the shares owned by them.[*]

Again, however, this is not to say that in the event of the refusal of a separate and subsequent demand for these books and records a court could not properly impose separate 10 per cent penalties for the refusal of such a demand, depending upon the facts and circumstances of the case. We need not, however, decide that question in this case.

For the reasons previously stated, the order of dismissal as entered by the trial court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[*] See generally, Annot., 71 ALR2d 986 (1960).