142 March 2, 2017 No. 12

IN THE SUPREME COURT OF THE
STATE OF OREGON

Lillian FIGUEROA,
*Plaintiff-Adverse Party,*

*v.*

BNSF RAILWAY COMPANY,
a Delaware corporation,
*Defendant-Relator.*

(CC 15CV13390; SC S063929)

En Banc

Original proceeding in mandamus.*

Argued and submitted November 10, 2016.

W. Michael Gillette, Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause for relator. Sara Kobak filed the briefs for relator. Also on the briefs were Noah Jarrett and Aukjen Ingraham of Schwabe, Williamson & Wyatt, P.C., and Andrew S. Tulumello and Michael R. Huston of Gibson, Dunn & Crutcher LLP, Washington DC.

Stephen C. Thompson, Kirklin Thompson & Pope, LLP, Portland, argued the cause and filed the brief for adverse party. Also on the brief was Kristen A. Chambers.

Robyn Ridler Aoyagi, Tonkon Torp LLP, Portland, filed the brief for *amicus curiae* Washington Legal Foundation.

Lisa T. Hunt, Law Office of Lisa T. Hunt, Lake Oswego, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

KISTLER, J.

Peremptory writ to issue.

Walters, J., concurred and filed an opinion, in which Brewer, J., joined.

_____

* On petition for writ of mandamus from an order of Multnomah County Circuit Court, Christopher J. Marshall, Judge.

**KISTLER, J.**

Oregon requires that foreign corporations doing business in this state appoint a registered agent to receive service of process. ORS 60.731(1).[1] The primary question that this case presents is whether, by appointing a registered agent in Oregon, defendant (a foreign corporation) impliedly consented to general jurisdiction here—that is, whether defendant consented to have Oregon courts adjudicate any and all claims against it regardless of whether those claims have any connection to defendant's activities in this state.[2] Defendant moved to dismiss this action because the trial court lacked general jurisdiction over it. When the court denied the motion, defendant petitioned for an alternative writ of mandamus. We issued the writ, the trial court adhered to its decision, and the trial court's ruling is now before us for decision. We hold, as a matter of state law, that the legislature did not intend that appointing a registered agent pursuant to ORS 60.731(1) would constitute consent to the jurisdiction of the Oregon courts.

Plaintiff was working for BNSF Railway Company in Pasco, Washington, where she was repairing a locomotive engine. To perform the repair, she had to stand on a portable stair placed on a catwalk on the locomotive. While she was reaching up to remove an engine part, the "portable stair supplied by [BNSF] rolled or kicked out from under [p]laintiff," causing her to sustain substantial injuries. Plaintiff alleged that her "injuries resulted in whole or in part from

---

[1] A "foreign corporation" refers to a corporation incorporated under the laws of another state or country. *See* ORS 60.001(15) (defining that term).

[2] Since *International Shoe Co. v. Washington*, 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), the United States Supreme Court has identified two types of jurisdiction—specific and general. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 US 915, 919, 131 S Ct 2846, 180 L Ed 2d 796 (2011) (defining those terms). Specific jurisdiction "describes the exercise of jurisdiction over a suit arising out of or related to the defendant's contacts with the forum." Philip Thoennes, *Personal Jurisdiction Symposium: An Introduction*, 19 Lewis & Clark L Rev 593, 594 (2015) (internal quotation marks omitted). By contrast, general jurisdiction "allows a state to exercise personal jurisdiction over a nonresident defendant, even if the cause of action neither arose in [the forum state] nor related to the [defendant's] activities in that State." *Id.* at 595. Although those terms did not gain currency until relatively recently, we use them in this opinion to describe the extent to which courts both before and after *International Shoe* exercised jurisdiction over nonresident defendants.

[BNSF's] negligence in failing to provide [her] with a safe place to work, and with safe tools and equipment." For the purposes of this case, we assume that those allegations are true.

BNSF is a foreign corporation. It is incorporated in Delaware and has its principal place of business in Fort Worth, Texas.[3] Plaintiff brought this action against BNSF in Oregon to recover for the injuries that she sustained in Washington. When BNSF moved to dismiss for lack of personal jurisdiction, plaintiff advanced three arguments. She argued: (1) that BNSF's activities in this state were sufficient for Oregon courts to exercise general jurisdiction over it; (2) that the Federal Employees Liability Act, 35 Stat 65, as amended, codified as 45 USC sections 51-60, gives a state general jurisdiction over interstate railroads doing business in the state; and (3) that, by appointing a registered agent in Oregon to receive service of process, BNSF had consented to general jurisdiction in Oregon. Our opinion in *Barrett v. Union Pacific Railroad Co.*, 361 Or 115, ___ P3d ___ (2017), resolves plaintiff's first two arguments. We write only to address her third argument regarding Oregon's registration statute.

## I.   OREGON'S REGISTRATION STATUTE

ORS 60.721 requires that foreign corporations doing business in Oregon maintain a registered office and appoint a registered agent in this state. ORS 60.731(1) provides that the registered agent "shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served." The parties disagree about what ORS 60.731(1) means. Relying on a 1915 Oregon case interpreting an earlier corporate registration statute, plaintiff argues that, by appointing a registered agent, BNSF impliedly consented

_____

[3] BNSF operates in 28 states, including Oregon, as well as two Canadian provinces. BNSF has been registered to do business in Oregon since 1970. It owns 235 route miles of track in Oregon and has trackage rights to another 151 miles in the state, which together represent slightly more than one percent of the 32,500 route miles that BNSF operates in all 30 jurisdictions. BNSF employs 368 employees in Oregon, who comprise less than one percent of its 41,000 employees. Finally, BNSF operates rail yards in Bend, Klamath Falls, and Portland, as well as an intermodal facility in Portland.

to general jurisdiction in Oregon. BNSF responds that ORS 60.731(1) requires only that a foreign corporation designate a person in Oregon upon whom process may be served; it says nothing about jurisdiction. Alternatively, BNSF argues that, even if appointing a registered agent manifests implied consent to specific jurisdiction, it does not constitute consent to general jurisdiction. Finally, BNSF contends that requiring foreign corporations to consent to general jurisdiction as a condition of doing business in Oregon violates the federal constitution.

As noted above, our holding in this case turns on the legislature's intent in enacting ORS 60.731(1). Specifically, we conclude that appointing a registered agent to receive service of process merely designates a person upon whom process may be served. It does not constitute implied consent to the jurisdiction of the Oregon courts. In reaching that conclusion, we follow our usual methodology for interpreting statutes. We consider the text, context, and legislative history of ORS 60.731(1). *See State v. Gaines*, 346 Or 160, 170-71, 206 P3d 1042 (2009) (describing statutory construction methodology).

A.   *Text*

ORS 60.731(1) provides:

"The registered agent appointed by a foreign corporation authorized to transact business in this state shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served."

Textually, ORS 60.731(1) addresses service, not jurisdiction. Jurisdiction refers to the forum's authority to adjudicate claims against a defendant. *Pennoyer v. Neff*, 95 US 714, 722-23, 24 L Ed 565 (1878). Service refers to the process by which a defendant over whom a court has jurisdiction is brought before the court. *See id.* at 727. Both are necessary for a court to issue a binding judgment, but the two concepts are not synonymous.

By its terms, ORS 60.731(1) addresses only one of those concepts. ORS 60.721 requires foreign corporations doing business here to designate a registered agent in this

state upon whom process may be served. ORS 60.731(1) defines the function that the registered agent serves; the agent is a person authorized to accept service of process "required or permitted by law" to be served on the corporation. The statute neither addresses jurisdiction nor equates appointing an agent for service with consent to jurisdiction in Oregon. Beyond that, ORS 60.731(1) requires that the agent be authorized to accept "any process, notice or demand *required or permitted by law* to be served upon the corporation." (Emphasis added.) As the emphasized text makes clear, ORS 60.731(1) looks to some other source of law to define which process a registered agent must be "required or permitted" to accept. If another source of law (the Fourteenth Amendment or a state long-arm statute, for instance) does not require or permit process to be served on the corporation, then ORS 60.731(1) does not provide an independent source of jurisdiction where there otherwise would be none. Rather, ORS 60.731(1) merely requires the registered agent be authorized to accept the process that another source of law "require[s] or permit[s]" to be served upon the corporation.

## B.  *Context*

Context includes "'the preexisting common law and the statutory framework within which the law was enacted.'" *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (quoting *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998)). In this case, there are three contextual sources that bear on the interpretation of ORS 60.731(1): (1) due process limitations on exercising personal jurisdiction over foreign corporations; (2) the 1903 Oregon corporation statute requiring foreign corporations to appoint a registered agent for service of process as a condition of doing business here and state cases interpreting that statute; and (3) the 1953 Oregon corporation statute, which revised and replaced the 1903 statute and enacted what is currently codified as ORS 60.731(1). We describe each of those sources briefly and then explain why those sources persuade us that this court's interpretation of the 1903 registration statute does not inform the current registration statute's meaning.

1.   *Constitutional limitations on jurisdiction over foreign corporations*

Between the enactment of the first comprehensive Oregon corporation statute in 1903 and the first major revision of that statute in 1953, the terms on which state courts could constitutionally exercise personal jurisdiction over foreign corporations changed. A brief discussion of that change in constitutional law is necessary to put the corresponding changes to Oregon's registration statutes in perspective.

In 1878, the United States Supreme Court held that the Due Process Clause places geographical limits on a state's exercise of jurisdiction over persons and property. *Pennoyer*, 95 US at 722-23; *see Burnham v. Superior Court of Cal., Marin County*, 495 US 604, 110 S Ct 2105, 109 L Ed 2d 631 (1990) (plurality) (describing *Pennoyer*). Regarding personal jurisdiction, the Court recognized that a state can adjudicate transient claims (negligence claims, breach of contract claims, and the like) against nonresident defendants (natural persons) if those persons were served within the state's geographical boundaries.[4] *Pennoyer*, 95 US at 733; *see Burnham*, 495 US at 617 (plurality). Under *Pennoyer*, a person's presence within the state's territorial boundaries gave the state authority to adjudicate transient claims against that person, and service while the person was within the state's jurisdiction perfected that authority.

*Pennoyer* did not consider when a state can exercise personal jurisdiction over foreign corporations. Before *International Shoe Co. v. Washington*, 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), the cases that addressed that issue started from the proposition that a corporation was subject to suit only in the state where it was incorporated. *See St. Clair v. Cox*, 106 US 350, 354, 1 S Ct 354, 27 L Ed 222 (1882) (discussing earlier decisions). As the Court explained, however, "[t]he doctrine of the exemption of a corporation

---

[4] The specific issue in *Pennoyer* was whether Oregon could exercise *quasi in rem* jurisdiction over property located in this state to determine a nonresident defendant's personal obligations. The Court held that Oregon had jurisdiction to do so but service had not been proper. In *Shaeffer v. Heitner*, 433 US 186, 97 S Ct 2569, 53 L Ed 2d 683 (1977), the Court held that, after *International Shoe*, a state could not rely on *quasi in rem* jurisdiction to determine a nonresident defendant's personal obligations, even with proper service.

from suit in a State other than that of its creation was the cause of much inconvenience and often of manifest injustice." *Id*. To avoid that problem, two related but separate theories for acquiring jurisdiction over foreign corporations developed.

One theory was based on implied consent. *See St. Clair*, 106 US at 354-55; *The Lafayette Insurance Co. v. French*, 59 US (18 How) 404, 407-08, 15 L Ed 451 (1855). Consent was implied either because the foreign corporation was doing business in the state or because the corporation had complied with a state statute requiring that it appoint a registered agent in the state to receive service of process. *See* William F. Cahill, *Jurisdiction over Foreign Corporations*, 30 Harv L Rev 676, 690 (1917); Joseph Henry Beale, *The Law of Foreign Corporations* § 280 (1904) (consent implied from merely doing business in a state). The other theory was based on presence. A foreign corporation that was doing business in a state was present in that state in much the same way that a natural person was. *Compare International Harvester v. Kentucky*, 234 US 579, 34 S Ct 944, 58 L Ed 1479 (1914) (continuous course of soliciting business and delivering machines in Kentucky was sufficient to establish that the corporation was doing business there and thus present), *with Green v. Chicago, Burlington & Quincy Ry.*, 205 US 530, 533-34, 27 S Ct 595, 51 L Ed 916 (1907) (soliciting business alone in a state insufficient to establish that the corporation was "doing business" there). If the foreign corporation's in-state agent was served with process while the corporation was doing business in the state, then the state courts could adjudicate transient claims against it. *Id*.

Because both implied consent and presence rested on the premise that a foreign corporation was "doing business" in a state, the line between the two theories was not always distinct. *See Tauza v. Susquehanna Coal Co.*, 220 NY 259, 115 NE 915 (1917) (reasoning that the defendant did sufficient business within New York to be subject to its jurisdiction under *International Harvester* and that it was amenable to general jurisdiction as a result of a state registration statute). Additionally, the cases were not always consistent regarding the consequences of the two theories. For example, a 1904 treatise explained that the majority rule was that a foreign corporation that was doing business

in a jurisdiction impliedly consented to general jurisdiction. Beale, *The Law of Foreign Corporations* § 280. The minority rule was that a foreign corporation doing business in a state was subject only to specific jurisdiction—a rule that Oregon initially followed. *Id.* (noting minority rule); *see Farrell v. Oregon Gold Co.*, 31 Or 463, 49 P 876 (1897) (doing business in Oregon without appointing an agent for service of process gave rise to specific jurisdiction); *Aldrich v. Anchor Coal Co.*, 24 Or 32, 32 P 756 (1893) (same).[5]

Before 1945, whether consent was manifested by appointing a registered agent pursuant to a state statute varied according to the terms of the statute. In 1882, the Court stated, as a general proposition, that foreign corporations that appointed a registered agent as a condition of doing business consented to specific jurisdiction. *See St. Clair*, 106 US at 356 (so stating). Later, in reconciling potentially divergent decisions, the Court explained:

> "Unless the state law either expressly or by local construction gives to the appointment [of a registered agent] a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere."

*Mitchell Furn. Co. v. Selden Breck Co.*, 257 US 213, 216, 42 S Ct 84, 66 L Ed 201 (1921). However, if a state statute made general jurisdiction the consequence of appointing a registered agent, then complying with the statute would constitute consent to general jurisdiction. *Pennsylvania Fire Insurance Co. v. Gold Issue Mining Co.*, 243 US 93, 37 S Ct 344, 61 L Ed 610 (1917). Finally, the Court recognized that, even though a foreign corporation had consented to jurisdiction by appointing a registered agent, it was not subject to the state's jurisdiction if it were no longer "doing business" in the state when the action was filed. *Chipman, Ltd. v. Jeffery Co.*, 251 US 373, 379, 40 S Ct 172, 64 L Ed 314 (1920); *see Mitchell Furn. Co.*, 257 US at 216 (recognizing

---

[5] In 1907, the United States Supreme Court held that a corporation that was merely doing business in a state was subject only to specific jurisdiction. *Old Wayne Life Ass'n v. McDonough*, 204 US 8, 22-23, 27 S Ct 236, 51 L Ed 345 (1907). The Court thus rejected the proposition stated in the 1904 treatise on foreign corporations, cited above, that merely doing business in a state without appointing a registered agent could subject a foreign corporation to general jurisdiction.

that qualification). That is, the foreign corporation's consent, manifested by appointing a registered agent, was not sufficient standing alone to give the forum general jurisdiction over the corporation. *Chipman, Ltd.*, 251 US at 379.[6]

In 1945, the Court recast the constitutional bases on which a state can exercise personal jurisdiction over nonresident defendants. *See International Shoe*, 326 US at 316-19. It explained that presence within the jurisdiction was no longer a necessary prerequisite to jurisdiction over a nonresident defendant. *Id.* at 316. It reasoned that, for foreign corporations, the "terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process." *Id.* at 316-17. Similarly, it recognized that "some of the decisions holding a corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents." *Id.* at 318. The Court explained that "more realistically it may be said that those authorized acts were of such a nature as to justify the fiction." *Id.*[7]

The Court thus shifted the federal constitutional basis for exercising jurisdiction over foreign corporations away from conclusory terms like "presence" and legal fictions like "consent" and grounded it instead on an assessment of "the quality and nature of the [defendant's] activity [within the forum] in relation to the fair and orderly administration

---

[6] *Chipman*'s holding appears to rest on the Court's interpretation of the state registered agent statute, although the Court explained that basing the decision on state law did not imply that federal law would not lead to the same result. 251 US at 379.

[7] After noting the legal fiction that foreign corporations had given implied consent to service and suit, the Court cited specific parts of four of its decisions. *See International Shoe*, 326 US at 318. The citations to each decision concerned consent implied from appointing a registered agent for receipt of process. *See Washington v. Superior Court*, 289 US 361, 364-65, 53 S Ct 624, 77 L Ed 1256 (1933); *Commercial Mutual Accident Co. v. Davis*, 213 US 245, 254, 29 S Ct 445, 53 L Ed 782 (1909); *St. Clair*, 106 US at 356; *The Lafayette Insurance Co.*, 59 US (18 How) at 407. The Court thus made clear that consent implied from appointing a registered agent was a legal fiction that "more realistically" rested on the extent of a corporation's activities within a state.

of the laws which it was the purpose of the due process clause to insure." *Id.* at 319. As the Court explained:

> "[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

*Id.* It followed, the Court explained, that courts will have specific jurisdiction "when the activities of the corporation [in the forum state] have not only been continuous and systematic, but also give rise to the liabilities sued on." *Id.* at 317. The Court also recognized that "there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318.

With that federal constitutional background in mind, we turn to Oregon law between 1903 and 1953.

2.  *Oregon law between 1903 and 1953*

In 1903, the legislature enacted Oregon's first comprehensive statute regulating domestic corporations and foreign corporations doing business here. Or Laws 1903, p 39. Among other things, the 1903 act required foreign corporations doing business in Oregon to appoint a registered agent in this state to receive service of process. *Id.*, pp 44-45, § 6. Specifically, section 6 of the 1903 act provided that, as a condition of doing business in Oregon, foreign corporations:

> "shall duly execute and acknowledge a power of attorney *** [which] shall appoint some person, who is a citizen of the United States and a citizen and resident of this state, as attorney in fact for such foreign corporation, *** and such appointment shall be deemed to authorize and empower such attorney to accept service of all writs, process, and summons, requisite or necessary to give complete jurisdiction of any such corporation *** to any of the courts of this state or United States courts therein, and shall be deemed to constitute such attorney the authorized agent of

such corporation \* \* \* upon whom lawful and valid service may be made of all writs, process, and summons in any action, suit, or proceeding, commenced by or against any such corporation \* \* \* in any court mentioned in this section, and necessary to give such court complete jurisdiction thereof."

*Id.*

Section 6 was written broadly. It required that the corporation's registered agent (its attorney in fact) be authorized to accept process "in any action, suit, or proceeding" that was "necessary to give [an Oregon] court complete jurisdiction" over the foreign corporation. Building on that statute, plaintiff contends that, in 1915, this court held that appointing a registered agent pursuant to section 6 constituted consent to general jurisdiction in Oregon. *See Ramaswamy v. Hammond Lumber Co.*, 78 Or 407, 152 P 223 (1915). In our view, this court's decision in *Ramaswamy* stands for a more limited principle than plaintiff perceives.[8] However, a 1928 decision, which plaintiff did not cite, provides greater support for her position. *See State ex rel. Kahn v. Tazwell*, 125 Or 528, 266 P 238 (1928), *overruled in part on other grounds*, *Reeves v. Chem Industrial Co.*, 262 Or 95, 100-01, 495 P2d 729 (1972). We accordingly describe that decision briefly and then turn to the third contextual source that bears on our inquiry—the revision of Oregon's corporations act in 1953.

In *Kahn*, the plaintiff (who was not a resident of Oregon) filed an action in Oregon to recover on an insurance policy that the defendant (a New York corporation) had issued to the plaintiff in Germany. 125 Or at 531-32. The defendant was doing business in this state and had appointed a registered agent to receive process pursuant to a statute governing foreign insurers, which was essentially

___

[8] The question in *Ramaswamy* was whether, under the 1903 act, a claim against a foreign corporation for an injury that occurred in Clatsop County should have been brought in Clatsop or Multnomah County. 78 Or at 411. This court reasoned that, under the 1903 act, the claim could be brought in Multnomah County, "no matter where the cause of action arose." *Id.* at 419. In making that statement, the court did not hold that the claim could be brought in Multnomah County even if it arose in another state. The court held only that, under the 1903 act, a claim against a foreign corporation could be brought in Multnomah County even though it arose in a different county in this state.

identical to section 6 of the 1903 act. *See id.* at 533-34 (setting out the registration statute applicable to foreign insurance companies).[9] This court held that service on the defendant's registered agent in Oregon gave this state jurisdiction over the defendant and that Oregon had "jurisdiction of the subject matter of the action, notwithstanding the fact that the contract of insurance was executed outside the state, and notwithstanding the fact that the plaintiff is a nonresident of the State of Oregon." *Id.* at 542.

In reaching that holding, this court touched on a variety of theories and sources. Among other things, it noted that foreign corporations that do business in a jurisdiction consent to be sued there either as a result of doing business in the state or as a result of appointing a registered agent as a condition of doing business. *See id.* at 538, 541. It also noted cases standing for the proposition that foreign corporations doing business in a state are present there. *Id.* at 537-38, 540. After citing a variety of legal sources, including various legal encyclopedias, the court concluded that Oregon had jurisdiction over the defendant to adjudicate a cause of action that arose in Europe. *Id.* at 542.

The decision in *Kahn* lacks a clear analytical thread. It consists of a compilation of theories and authorities that reflect, in many ways, the varied theories for exercising jurisdiction over foreign corporations that the federal and state courts had articulated in the early part of the twentieth century. It is difficult to say, however, that *Kahn* does not stand for the proposition that, by appointing a registered agent pursuant to a statute virtually identical to section 6 of the 1903 act, the defendant consented to general jurisdiction in Oregon. *Id.* at 542. That theory and others run through the decision. We accordingly assume, for the purposes of deciding this case, that *Kahn* stands for the proposition that appointing a registered agent pursuant to the 1903 act constitutes implied consent to general jurisdiction. The question that remains is whether that interpretation of

---

[9] Although the defendant was doing business here and presumably issued other insurance policies to Oregon residents, the opinion in *Kahn* does not identify any act or event in Oregon that related to the claim or policy at issue in that case.

the 1903 act continues to inform our understanding of ORS 60.731(1).[10] We accordingly turn to ORS 60.731(1), the third contextual source that bears on the inquiry.

### 3.  *Oregon law after 1953*

Fifty years after it passed the 1903 corporations act, the Oregon legislature undertook a major revision of that act. *See* Or Laws 1953, ch 549. In 1953, it enacted the Oregon Business Corporation Act, which it modeled on the 1950 Model Business Corporation Act drafted by the American Bar Association (ABA). *See Meyer v. Ford Industries*, 272 Or 531, 535, 538 P2d 353 (1975) (so noting). The 1953 Oregon Business Corporation Act addressed domestic and foreign corporations separately. *See* Or Laws 1953, ch 549, §§ 98-116 (setting out provisions for foreign corporations separately from the previous provisions that had addressed domestic corporations).

Unlike the 1903 corporations act, the 1953 act required both domestic and foreign corporations to appoint a registered agent in this state. That is, the 1953 act included virtually identically worded provisions requiring domestic and foreign corporations to appoint a registered agent and specified that the agents for both types of corporations would serve the same function. On the latter issue, section 13 of the 1953 act provided that for domestic corporations:

> "The registered agent so appointed by a corporation shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served."

*Id.* § 13; *see* ORS 60.121(1) (codifying section 13). Section 107 provided that for foreign corporations:

> "The registered agent so appointed by a foreign corporation authorized to transact business in this state shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served."

---

[10] As explained below, we conclude that *Kahn* is no longer good law after the enactment of the 1953 Oregon Business Corporation Act. In reaching that conclusion, we express no opinion on whether, under *International Shoe*, the Oregon courts could have exercised specific jurisdiction over the defendant in *Kahn*.

Or Laws 1953, ch 549, § 107; *see* ORS 60.731(1) (codifying section 107). The only difference between the two provisions is that the latter applies to "a foreign corporation authorized to transact business in this state" while the former applies to domestic corporations. Although the 1953 act has been amended since its enactment more than 60 years ago, the terms of ORS 60.121(1) and ORS 60.731(1) have remained unchanged.[11]

With that context in mind, we turn to whether this court's interpretation of the 1903 act (or its counterpart for insurers) in *Kahn* informs our understanding of ORS 60.731(1). We draw three inferences from that context. First, the text of ORS 60.731(1) differs significantly from the text of the 1903 act, which suggests that the 1953 legislature had a different goal in mind. Second, those textual changes correspond with the shift in 1945 of the constitutional basis for exercising jurisdiction over foreign corporations from implied consent to the nature and quality of the corporation's contacts with the forum state. Third, by specifying that service of process on the registered agents for domestic and foreign corporations serves the same function, Oregon's 1953 corporation act negates the proposition that appointing a registered agent constitutes implied consent to jurisdiction.

    a.   Textual differences between the 1953 and 1903 acts

ORS 60.731(1) lacks the terms that persuaded this court in *Kahn* that section 6 of the 1903 act gave Oregon courts general jurisdiction over foreign corporations.[12] The 1903 act directed foreign corporations to execute a written power of attorney appointing an attorney in fact as the agent for the corporation. Or Laws 1903, pp 44-45, § 6. It then provided that

---

[11] In 1987, the legislature renumbered the provisions in the 1953 corporation act. *See* Or Laws 1987, ch 52. However, except for being renumbered, the terms of ORS 60.121(1) and ORS 60.731(1) have remained the same since 1953.

[12] As noted above, the foreign insurer in *Kahn* appointed a registered agent pursuant to a statute governing foreign insurers that is essentially identical to section 6 of the 1903 act. For ease of reference we refer only to the 1903 act, which *Kahn* cited interchangeably with the specific statute at issue in that case.

> "such appointment \*\*\* shall be deemed to constitute such attorney the authorized agent of such corporation \*\*\* upon whom lawful and valid service may be made of *all* writs, processes, and summons in *any* action \*\*\* in *any* court commenced \*\*\* against any such corporation, \*\*\* and *necessary to give such court complete jurisdiction thereof.*"

*Id.* (emphasis added). As the court observed in *Kahn*, the terms that the 1903 legislature used were "'broad and comprehensive.'" 125 Or at 538 (quoting *Ramaswamy*, 78 Or at 419). Not only did the 1903 act provide that appointing a registered agent for service of process would give Oregon courts "complete jurisdiction" over a foreign corporation, but it specified that it would do so "in any action \*\*\* in any court" in this state.

The current statute, by contrast, is worded more modestly. As discussed above, ORS 60.731(1) refers only to service. It omits any reference to jurisdiction, and certainly any reference to "complete jurisdiction." Indeed, because ORS 60.731(1) provides that the registered agent be authorized to accept only that process that is "required or permitted" by another law, it makes clear that ORS 60.731(1) is not itself a source of jurisdiction, as *Kahn* concluded the counterpart to section 6 of the 1903 act was.

      b.   Changing due process limitations on jurisdiction

As discussed above, in 1856 and again in 1882, the United States Supreme Court recognized that foreign corporations that appointed an agent to receive service of process impliedly consented to the state court's jurisdiction. *St. Clair*, 106 US at 356; *The Lafayette Insurance Co.*, 59 US (18 How) at 407. Implied consent was one way of avoiding the immunity from suit that foreign corporations otherwise would enjoy outside the state of their incorporation. *See St. Clair*, 106 US at 356. When Oregon enacted its registration statute for foreign corporations in 1903, it joined a growing number of states seeking to make foreign corporations amenable to suit within their state. *See* Cahill, *Jurisdiction over Foreign Corporations*, 30 Harv L Rev at 690 n 31 (listing Oregon as one of 37 jurisdictions that, by 1917, had adopted such statutes).

Oregon's 1953 corporations act and the 1950 model act on which it was based were written after the Court decided *International Shoe* in 1945. That decision grounded jurisdiction on the foreign corporation's contacts within the state instead of basing jurisdiction on fictions like implied consent. After *International Shoe*, a state need not resort to statutes, like Oregon's 1903 act, that provided that service on the foreign corporation's registered agent would lead to "complete jurisdiction" over the corporation. Given that shift in understanding, it should come as no surprise that the 1950 model corporation act adopted by Oregon in 1953 omitted any reference to service conferring jurisdiction over a foreign corporation. That is, *International Shoe* provides a complete explanation for the shift in wording between the 1903 and the 1953 corporate registration statutes.

      c.   Equivalent provisions for domestic and foreign corporations

A third contextual clue points in the same direction. As noted, Oregon's 1953 act requires both domestic and foreign corporations to appoint a registered agent. It also defines, in provisions that are essentially identical, the function that the registered agent serves for both domestic and foreign corporations. The 1953 act provides that a corporation's registered agent, whether appointed by a domestic or by a foreign corporation, "shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served." ORS 60.731(1) (foreign corporations); ORS 60.121(1) (domestic corporations).

Because a state already has jurisdiction over domestic corporations, there is no need to require a domestic corporation to appoint a registered agent in order to obtain jurisdiction over the corporation, nor is there any reason to assume that, in appointing such an agent, a domestic corporation impliedly consents to jurisdiction. It follows that, when the 1953 Oregon legislature required that registered agents appointed by domestic corporations be authorized to receive "any process, notice or demand required or permitted by law to be served upon the corporation," it presumably did so for the sole purpose of having an easily identifiable

person within the state upon whom process could be served. Unless the model act and the Oregon legislature intended to require an unnecessary act, requiring a domestic corporation to appoint a registered agent for receipt of service does not constitute consent to jurisdiction.

The same terms that apply to domestic corporations in ORS 60.121(1) apply to foreign corporations in ORS 60.731(1). Ordinarily, we assume that, when the legislature uses the same terms throughout a statute, those terms have the same meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993); *accord* ORS 60.714(1).[13] That is, we assume that the 1953 legislature intended that ORS 60.731(1) would serve the same purpose for foreign corporations that ORS 60.121(1) serves for domestic corporations. Both statutes require foreign and domestic corporations to designate a person upon whom process "required or permitted by law to be served upon the corporation may be served." If the legislature intended that appointing a registered agent pursuant to ORS 60.731(1) would constitute consent to jurisdiction while appointing a registered agent pursuant to ORS 60.121(1) would not, it picked an odd way of saying so. Rather, the more reasonable inference from that context is that, under the 1953 act, neither a domestic nor a foreign corporation consents to jurisdiction by appointing a registered agent for service of process.

For the reasons discussed above, the text and the context of ORS 60.731(1) persuade us that the 1953 Oregon legislature required domestic and foreign corporations to designate a registered agent only so that there would be an easily identifiable person on whom any process required or permitted by law to be served on the corporation could be served. The legislature did not intend that, in appointing a registered agent, a foreign corporation also would impliedly consent to the jurisdiction of the Oregon courts.

---

[13] ORS 60.714(1) provides that a foreign corporation authorized to do business in Oregon shall have the same rights and obligations as a domestic corporation, except as otherwise provided. In this instance, ORS 60.731(1) does not provide that appointing a registered agent for a foreign corporation will have a different effect than the same act will have for a domestic corporation. Rather, it provides that the act will have the same effect. Given ORS 60.714(1), we interpret the effect of complying with ORS 60.731(1) the same way that we interpret the effect of complying with ORS 60.121(1).

C.   *Legislative history*

There is little Oregon-specific history for the 1953 corporations act. We know that, in 1951, the Oregon State Bar committee on corporation law was studying the ABA's 1950 Model Business Corporation Act. Oregon State Bar, *Committee Reports* 11 (1951). The committee hoped to present "a draft of a Revised Corporation Code" to the 1952 Bar Convention. *Id.* We also know that, in 1953, the Oregon legislature adopted the Oregon Business Corporation Act based on the ABA's model act. Beyond that, there are no records of the legislative proceedings that led to the adoption of the 1953 Oregon Business Corporation Act.

Previously, this court has looked to the comments to the model act to determine the legislature's intent in enacting the Oregon Business Corporation Act. *See Meyer*, 272 Or at 536 & n 5 (looking to that source); *cf. Datt v. Hill*, 347 Or 672, 680, 227 P3d 714 (2010) (considering, as legislative history, the comments to a uniform act that Oregon adopted).[14] We follow that course here. Section 11 of the model act requires domestic corporations to "have and continuously maintain" a registered office and a registered agent. American Law Institute, *Model Business Corporation Act* § 11 at 12 (revised 1950). Section 13 provides that the registered agent appointed by a domestic corporation "shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served." *Id.* at 13. The comment to those sections explains:

"Any notice or process required or permitted by law may be served upon the registered agent (Section 13). The name and address of the initial agent must be stated in the articles of incorporation (clause (j) of Section 48) and any

---

[14] The Model Business Corporation Act was initially drafted in 1946 and revised in 1950. Ray Garrett, *Model Business Corporation Act*, 4 Baylor L Rev 412, 424-25 (1952). The revised version of the act was published initially in 1950 and republished with comments by the American Law Institute in 1951. *Id.* We rely on those comments, which would have been available to the 1953 Oregon legislature. We note that the comments to the model act were supplemented when a three-volume annotated edition of the act was published in 1960. *See* American Bar Foundation, *Model Business Corporation Act Annotated* (1960). Although the supplemented comments are consistent with our conclusion, they would not have been available to the 1953 legislature. For that reason, we do not rely on them.

> change of the name or address of the agent must be filed with the Secretary of State (Section 12). Failure to appoint and maintain such an agent subjects the corporation to involuntary dissolution (clause (d) of Section 87)."

*Id.* at 12.

The comment to sections 11 and 13 is brief. As the committee that drafted the act noted, the primary function of the comments is to "explain the interrelations of [the] Sections to other Sections of the Model Act, with a minimum of editorial comment." *Id.* at x (preface). The committee explained that it "consider[ed] that in all other respects the provisions speak for themselves." *Id.* Taking the committee at its word, we conclude from the text of sections 11 and 13 and the comment to them that the purpose of requiring domestic corporations to appoint and maintain a registered agent was to provide an easily identifiable person upon whom process could be served. Nothing in the text of those provisions or the comment suggests that, by requiring domestic corporations to appoint a registered agent for service of process, the corporation consented to jurisdiction.

The model act imposes the same requirements on foreign corporations. Section 106 requires that foreign corporations authorized to transact business in a state "have and continuously maintain" in that state a registered office and a registered agent. *Id.* at 92-93. Section 108 provides for foreign corporations, as section 13 provided for domestic corporations, that the registered agent so appointed "shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served." *Id.* at 94. As with domestic corporations, the comment on those sections is brief. It states: "A foreign corporation is required to designate and maintain a registered office and agent in the State (Section 106) for service of process (Section 108)." *Id.* at 91.

The comment identifies the same purpose for requiring foreign corporations to appoint a registered agent that it does for domestic corporations—foreign corporations are required to designate a registered agent "for service of process." We draw two inferences from that comment. First, if domestic corporations do not impliedly consent to

jurisdiction by appointing a registered agent, then neither do foreign corporations. Second, the only reason that the comment identifies for requiring foreign corporations to designate a registered agent is "for service of process." The comment does not say that appointing a registered agent in a state constitutes implied consent to jurisdiction.

As we read the comments to the model act, they support and are consistent with the conclusion that we draw from the text and context of Oregon's Business Corporation Act—appointing a registered agent for service of process serves the same purpose for foreign corporations that it serves for domestic corporations: It designates an easily identifiable person upon whom service may be made. It does not constitute implied consent to jurisdiction.

## II.   CONCLUSION

Considering the text of ORS 60.731(1) together with its context and history, we conclude, as a matter of state law, that the Oregon legislature did not intend that appointing a registered agent pursuant to that subsection would constitute consent to the jurisdiction of the Oregon courts. For the reasons set out above and in *Barrett*, the trial court erred in ruling that it had general jurisdiction over BNSF.[15]

Peremptory writ to issue.

**WALTERS, J.,** concurring.

Giving effect, as I must, to the court's decision in *Barrett v. Union Pacific Railroad Co.*, 361 Or 115, __ P3d __ (2017), I concur in the court's decision in this case.

Brewer, J., joins in this concurring opinion.

---

[15] In the trial court, plaintiff did not contend, in response to BNSF's motion to dismiss for lack of general jurisdiction, that the trial court could exercise specific jurisdiction over BNSF. As in *Barrett*, we express no opinion on whether the failure to raise specific jurisdiction in the trial court forecloses plaintiff from doing so when this case returns to that court. The parties have not briefed that issue in this court, and we leave the issue initially to the trial court.